STATE OF IOWA, Appellee, v. H. D. KELLY, Appellant.

**Criminal law:** MURDER: VARIANCE. Under an indictment charging
1   defendant with having killed deceased on a certain date, the jury was not at liberty to find that the crime was committed on another date within the statutory period.

**Same:** SPECIAL FINDING: PRESUMPTION. Where the undisputed evi-
2   dence showed that defendant killed deceased on a certain date, as charged in the indictment, it will be assumed from the affirmative answer to a special interrogatory, as to whether defendant was insane at the time he shot and killed deceased, that the crime was committed on that date.

**Same:** SPECIAL FINDING: GENERAL VERDICT: CONFLICT: NEW TRIAL.
3   A general verdict of guilty and also an affirmative answer to a special interrogatory finding defendant insane on the day he shot and killed deceased, after the instruction of the court that the act was not excusable if defendant was able to control his acts although he might have been mentally unsound to some degree, presented such a doubtful finding regarding defendant's sanity at the time of the act as to require a new trial.

PRESTON J. in a separate opinion.

*Appeal from Polk District Court.*—HON. CHARLES S. BRADSHAW, Judge.

TUESDAY, JANUARY 20, 1914.

INDICTMENT for murder in the first degree. Special defense, insanity. Verdict of manslaughter and a special finding that the defendant was insane at the time of the commission of the act. Judgment on the general verdict. Defendant appeals. Reversed on the ground that there is an apparent

inconsistency between the special finding of the jury and the general verdict.—*Reversed.*

*Saunders & Stuart,* and *Mulvaney & Mulvaney,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, and *Thos. Guthrie,* County Attorney for the State.

GAYNOR, J.—The defendant was indicted on the charge of murder in the first degree in the killing of one Edward Sterzing on March 25, 1911. The defendant having entered a plea of not guilty, the cause was tried and submitted to a jury, and the jury returned a verdict finding the defendant guilty of manslaughter.

The defendant interposed as defense that at the time of the killing of Edward Sterzing he was insane; that such insanity was superinduced by the long and continued use of intoxicating liquors, drugs, and narcotics.

There was no claim made by the defendant that he did not shoot and kill Edward Sterzing, and this element of the charge in the indictment was not controverted, but was conclusively established by the evidence.

The court submitted, with its instructions, the following special interrogatory: "Do you find that the defendant, H. D. Kelly, was insane on the 25th day of March, 1911, when it is charged that he shot and killed Edward Sterzing?" The jury answered, "Yes."

Upon the return of the verdict, the defendant moved for a judgment upon the special finding, notwithstanding the general verdict. This motion was overruled, and judgment pronounced on the general verdict.

There is no room for even a suggestion, such as is made by counsel for the state, "that the jury in determining the

guilt or innocence of the defendant were not limited to the
25th day of March, 1911, but could have found
the crime was committed at any date within
the statutory period." It is urged that the
charge in the indictment was not the test as to the time of the
commission of the act, and therefore a finding that he was
insane on the 25th day of March did not necessarily deter-
mine that he was insane at the time the shot was fired. The
charge in the indictment was that the shot that killed Edward
Sterzing, was fired by the defendant on the 25th day of March.
All the evidence, without exception, supports the charge that
the shot was fired at that time. We must therefore assume,
in the consideration of this case, not only that he was charged
with having shot Edward Sterzing on the 25th day of March,
but also that the jury, following the evidence, so found.

1. CRIMINAL
LAW: murder:
variance.

The special interrogatory submitted to the jury, not
only requests them to state whether or not he was insane
on the 25th day of March, 1911, but reaches, in its inquiry
the very time at which the shot was fired.
It is to be presumed that the court did not
submit the interrogatory except for the in-
formation of the court upon the issue tendered, and for the
purpose of enabling the court to know what the jury's find-
ing was upon that issue. The insanity of the defendant at
any other time was not material, and a finding as to that
would not be helpful to the court in determining what its
duty was to the state and to the defendant. The court had
very explicitly and definitely defined to the jury that insan-
ity, its character and degree, which relieves from criminal
responsibility. The court had clearly differentiated between
that and voluntary intoxication, and the jury were warned
not to confuse insanity with intoxication. The court clearly
and definitely directed the jury's attention to the difference
between insanity and passion or revenge, and pointed out
to them, in unmistakable terms, the difference between the
criminality of an act when the act is the direct result or

2. SAME: special
finding: pre-
sumption.

offspring of insanity and where the act is the result or off-
spring of passion or revenge, and said to the jury, in language
that could not be misunderstood, that passion or revenge, even
though it had gained control of the person to such an extent
that reason was driven from its seat, would not constitute
such insanity as would excuse one in the commission of an
act which otherwise would be criminal.

The interrogatory propounded by the court was sub-
mitted to the jury for the purpose of ascertaining from them
what their finding was upon the defense interposed. This
was evidently the purpose of the court in submitting the in-
terrogatory. It was evidently submitted to the jury for the
purpose of ascertaining from them a definite answer or
finding upon this issue. The issue for the jury to deter-
mine, and to which this question was directed was: ''Was
the defendant insane at the time he shot Edward Sterzing?''
The jury answered: ''The defendant was insane at the time
he shot Edward Sterzing.'' The plea was that he was then
insane, and the evidence was offered to support this plea. It
was a material issue, and one which the jury were required
to pass upon and determine before they could reach a final
conclusion upon the question of his guilt or innocence of the
charge made against him. It would appear to the writer of
this opinion that it should be assumed that the jury under-
stood that the interrogatory called for a finding upon the
issue of his insanity as involving the criminality of the act
charged. It would not appear to the writer that the jury
understood that the court was submitting to them an idle
question, an answer to which, affirmative or negative, would
not be determinative of the issue.

The court, in one of its instructions said to the jury, in
substance, the defendant interposes as one of his pleas that he
was insane at the time of the commission of the act charged
against him, and the court said that such a plea, if proven,
is a complete excuse for the crime charged, and each and
every offense included therein, and this is true regardless of

what caused the insanity. "It is not necessary, in order to acquit, that the evidence on the subject of insanity satisfy you beyond a reasonable doubt that the defendant was insane. It is sufficient if, upon consideration of all the evidence, you are reasonably satisfied that he was then insane at the time of the commission of the act." This was the law of the case as it was given to the jury.

Upon what rational hypothesis the jury could have found, under the law as given to them by the court, and the evidence as submitted to them, that the defendant was insane at the time that he committed the act charged against him, and yet was criminally responsible for the commission of the act, the writer of this opinion is unable to determine. It must be borne in mind that practically all the evidence was introduced on this issue. The question of defendant's criminality at every stage of the case was challenged upon this ground. A majority of the court, however, is of the opinion that neither the question nor the answer presented the matter to the jury so that it can be said therefrom that the jury affirmatively found that, though insane, his insanity had reached the point where he was legally excused from criminal responsibility for his act; that even though insane, he would not be excused if he was then able to control his acts if he desired to do so, and, even though insane, he would not be excused unless the act charged against him was the immediate offspring of such insanity; that the question propounded by the court, and answered by the jury, did not meet that instruction given by the court to the jury, in which the court said: "It should appear, not only that the accused was insane, but also that the act for which he was indicted was the direct offspring of such insanity."

3. SAME: special finding: general verdict: conflict: new trial.

The court, charging the jury upon the question of insanity, said:

The nature, character, and degree of insanity which

exonerates a person from criminal responsibility is not easily explained or understood. It is not necessary that it be shown by the evidence that the defendant, at the time of the commission of the act, if he did commit it, did not know right from wrong as to his acts in general. The inquiry must be directed to the act charged.

If you find from the evidence that the defendant shot and killed Edward Sterzing, and that the defendant's act in shooting Edward Sterzing was caused by mental disease or unsoundness, which dethroned his reason and judgment with respect to that act, which destroyed his power to rationally comprehend the nature and consequence of the act, and which, overpowering his will, inevitably forced him to its commission, then he is not, in law, guilty of any crime, and your verdict should be, 'Not guilty, on the ground of insanity.'

It is not necessary that it should be shown that the defendant was insane at all times, or for some particular or considerable length of time. It is sufficient to excuse him, if he was insane at the time of doing the act complained of, if such insanity caused said act; *but he would not be excused if he was able at that particular time, to control his acts, had he desired to do so, even though he might have been, in some degree, unsound mentally.*

In other words, it should appear not only that the mind of the accused was insane, but also that the act for which he was indicted was the direct offspring of such insanity. This being shown he ceases to be responsible for the act, *but not otherwise.*

In the event that you acquit the defendant, on the ground of insanity, the statute requires that you state that fact in your verdict.

From these instructions it is contended that the jury were told in effect, and properly so, that they might find that the defendant was insane in some degree, and still be accountable; that he could not be convicted unless he was insane to such a degree as to be not responsible, as defined in these instructions; that, the jury having these instructions before their minds, the presumption is that they followed them; that the answer to this special finding and the general verdict do not clearly show what the real purport and meaning

of the jury's answer is upon this question; what the finding of the jury was upon the ultimate question of criminality.

It is suggested that by their finding they determined that he was insane in some degree, but not affirmatively that his insanity had reached that degree which rendered him criminally irresponsible. The general verdict suggests that, though insane, his insanity had not reached that degree that rendered him irresponsible.

It is claimed that the purpose of the court in submitting the interrogatory was evidently intended to secure a finding from the jury of the defendant's insanity as affecting his responsibility for the crime, but the form of the interrogatory does not reach the full matter, and leaves the mind in doubt as to what the jury's finding was upon this issue. The question is not so much what the court intended by the interrogatory, as it is the intention and meaning of the jury as shown by their two findings.

The jury by their verdict may have found that he was guilty of having taken the life of Edward Sterzing, and by the answer to the special interrogatory found that he was insane, and therefore not criminally responsible. The jury found the defendant guilty of manslaughter. Manslaughter is the unlawful killing of a human being without malice or forethought. The killing of a human being, under the circumstances disclosed in this case, by one not insane, would unquestionably be not less than manslaughter.

The question as propounded to the jury, touching the insanity of the defendant, involved only his criminal responsibility for the act. It is therefore, in the judgment of the majority of this court, a question of doubt as to what the jury really found by their two verdicts touching the real issue upon which they were required to pass. This doubt ought to be, and is, resolved in favor of the defendant.

We think the court erred in pronouncing judgment upon the general verdict, and that the defendant's motion for a new trial should have been sustained. The case is therefore

reversed and remanded.—*Reversed* and *Remanded*.  All the
Justices concur.

PRESTON, J. (for himself).—As I understand the record,
the interrogatory was given at the request of the defendant.
The mistake of the trial court was in submitting it in the form
in which it was given.  If given at all, it should have been as
to whether defendant was insane to such a degree as to absolve
him from responsibility for the act.  There is an apparent
conflict between the general and the special verdict, though,
for myself, I think they can be harmonized.  The majority
believe the best way out of the difficulty is to send the case
back for another trial.  Under the circumstances, I do not
seriously object to this, though I am of opinion that the judg-
ment could be properly affirmed for two reasons:  First.  The
evidence was such that the jury could have found that de-
fendant was sane and responsible, or insane and not account-
able, or they could have found that he was insane to some
extent, but that he was nevertheless responsible for his act
in killing deceased.  Some of his own witnesses testified that
he was insane to some extent, but would not say that he was
insane to the extent that he would not be accountable.  Sec-
ond.  As between the two verdicts, the general verdict con-
trols.

In civil cases, the provisions of the statute as to special
findings and special verdicts are found in sections 3727, 3728,
and 3778.  Section 3728 provides that when the special find-
ing is inconsistent with the general verdict, the former con-
trols.  The statute does not so provide in criminal cases (sec-
tion 5405) ; but, in the absence of statute, such seems to be
the rule.  Clementson, Special Verdicts, 126.  There is some
difference between a special verdict and a special finding,
which will not be now noticed.

Before the special finding shall control, it must be in-
consistent with the general verdict, and so clearly so as that
it cannot be reconciled with it.  Every presumption is in

favor of the general verdict, and the special finding must be made to harmonize with it if it is possible to do so. Clementson, Special Verdicts, 131-134; *Bonham v. Ins. Co.*, 25 Iowa, 328; *Bills v. Ottumwa*, 35 Iowa, 110; *Mitchell v. Joyce*, 76 Iowa, 449; *Johnson v. Miller*, 82 Iowa, 693; *Morrow v. Bonebrake*, 84 Kan. 724 (115 Pac. 585, 34 L. R. A. (N. S.) 1147); *Wallenburg v. Railway*, 86 Neb. 642 (126 N. W. 289, 37 L. R. A. (N. S.) 135).

For the reasons before given, I think under the evidence the special verdict in this case can be harmonized with the general verdict. It is clear the jury did not intend to acquit on the ground of insanity, or on any other ground.