STATE OF IOWA, Appellee, v. ED PHILPOTT, Appellant.

No. 43477.

February 16, 1937.

Rehearing Denied June 18, 1937.

Edward L. O'Connor, Attorney General, and Walter F. Maley, Asst. Attorney General, for appellee.

Flick & Lucas and Wisdom & Kirketeg, for appellant.

Stiger, J.—In the year 1935, the defendant was president of the Grove Township School District consisting of nine schools and a director of School District No. 7. W. P. Becherer was secretary of the Grove Township School District. At a meeting of the school board of this district on July 1, 1935, the defendant was authorized by the board to order coal for the district. Pursuant to this authority, the defendant purchased coal from the John Anderson Coal Company at Sharpsburg, Iowa, for $7.20 per ton through its manager, W. R. Grazier. Newton Aldredge and Earl Marshall were employees of the coal company and hauled all of the coal received by the company under the order

from Philpott. The coal company delivered all but the last three loads of coal from this car load to the several schoolhouses and the last three loads were delivered to the defendant's home. The defendant claims that the three loads of coal delivered to him were purchased by him from the coal company and paid for.

On November 14, 1935, the following indictment was returned against the defendant:

"THE GRAND JURORS OF THE COUNTY OF TAYLOR in the name and by the authority of the State of Iowa accuse Ed Philpott of the crime of larceny and charge that the said Ed Philpott on or about the 21st day of September, 1935, in the County and State aforesaid did wilfully, unlawfully and feloniously steal, take and carry away the property of another, to-wit: some coal to the value of over $20.00, belonging to the Grove Township School District, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Iowa."

The jury returned a verdict of guilty and fixed the value of the property at $54.07. Judgment was entered on the verdict. The defendant filed motions for a directed verdict, in arrest of judgment, motion for new trial and exceptions to the instructions. All motions and exceptions to the instructions were overruled. The defendant appeals.

I. The defendant urges that the court committed prejudicial and reversible error in permitting the State's witness, Becherer, to testify on re-direct examination to hearsay statements made by the truck driver, Newton Aldredge. The court sustained the first objection made by defendant to a question calling for hearsay testimony. While the court overruled a motion to strike other testimony of this witness as hearsay, the question called for and the answer gave the same information that the defendant obtained from the witness on cross-examination and therefore, assuming the testimony was objectionable, as hearsay, the defendant is not in a position to complain of its admission.

The defendant on cross-examination of this witness had brought out that Becherer first learned that the defendant was getting coal from one of the truck drivers, Aldredge, who told him about it at his house. On re-direct examination, the witness was interrogated as follows:

"Q. Do you know the purpose Mr. Aldredge had in coming up there that night?".

Objected to as calling for the opinion and conclusion of the witness. Objection overruled.

"A. To find out if there was anything that could be done about Philpott getting this coal."

While the objection should have been sustained, the admission of the evidence was not so prejudicial as to constitute reversible error, especially in view of the cross-examination.

■ II. On re-direct examination of the State's witness Aldredge, he was asked this question:

"Q. State whether or not there was room in these eight coal houses to hold the coal that was taken to Mr. Philpott's place." Defendant's objection was overruled. No answer was given to this question and furthermore it called for evidence that was material to plaintiff's theory of the case. There is no merit to defendant's assignment of error based on the overruling of this objection.

■■ III. The defendant urges that the court committed prejudicial and reversible error in overruling the defendant's motion for a directed verdict at the close of the State's evidence. The gravamen of this assignment of error is that the evidence fails to show that the defendant stole coal from Grove Township because the ownership of the coal by the township at the time it was delivered to defendant by the Anderson Lumber Company was not established.

We will set out some of the State's evidence material to this issue.

On July 1, 1935, at a meeting of the Grove Township school board, defendant was authorized to purchase coal for the district. Pursuant to this authority, the defendant went to W. R. Grazier, manager of the John Anderson Lumber Yard at Sharpsburg, and told him the school district would need about 56 tons for the eight schools in the district and they agreed on a price of $7.20 per ton. On July 27, 1935, the company sold coal to the Grove Township school board under the following contract:

"EX. 6                    Sharpsburg, Iowa       7-27 1935
              "John Anderson Lumber & Coal
"Lumber, Builders Hardware, Mill Work, Coal, Roofing, Brick
     "Grove Township School Boards.

"Contract for School Coal Delivered to School houses at $7.20 per ton plus tax. Franklin County, Ill., Lump Coal.

"John Anderson Lbr. Yard."

which contract was delivered to defendant Philpott. The company was to pay the freight and deliver the coal to the school houses for the price of $7.20 per ton.

At the same time, Mr. Grazier agreed to furnish coal to the defendant and anyone else that wanted it at the same price delivered.

The coal arrived in Sharpsburg on the night of September 18th and delivery to the schoolhouses began on the 19th. Grazier testified that all this coal was sold to the Grove Township School District. About noon on Saturday, the 21st, Grazier told Philpott the schoolhouses were full. At this time there were about three truck loads remaining in the car. Defendant then told Grazier to send the rest of the coal out to his house. After two loads were delivered to the defendant's home, and the third load had been weighed at the company's yard, the defendant came to Mr. Grazier's office ahead of the truckers and said to Grazier: "I am not going to pay you for this coal, but I will give you a check in front of the boys to make them think I am paying for it." When the truckers came into the office, the defendant said in their presence, "Figure that up and I will pay you for it." Grazier then figured the price of the three loads, told Philpott the amount due and Philpott wrote out a check and as soon as the truckers left the defendant said, "Give me the check back and I will tear it up. Grove Township is supposed to pay for my coal." Grazier then stated, "I told him that he knew that the Grove Township wasn't going to pay for the coal and that this would get him and me in trouble." The defendant then stated to Grazier, "Don't you say a damn word about this." Grazier testified he would not have delivered the coal to Philpott if he had known he did not intend to pay for it.

There was evidence that the coal was to be sold on mine weights and the mine weights of this car load of coal was 107,600 pounds or 53 tons, 1600 pounds. During the afternoon of the 21st, Grazier made out a bill for all the coal to the school district, identified in the record as Exhibit No. 3, which was approved by the defendant as president of the board, although he had received 6 or 7 tons of the coal. Exhibit No. 3 reads as follows:

"Statement
"Clearfield, Iowa 9-21, 1935
"Sharpsburg,
"John Anderson Lumber & Coal
"Lumber, Builders Hardware, Mill Work, Coal, Roofing, Brick
"Grove Township Schools
"No. 1, 2, 3, 4, 5, 6, 7, 9
"Payed by order No. 195
"107,600 Lbs. Ill. Coal Delivered to Grove Schools

| | |
|---|---:|
| at Contract Price of $7.20 per ton | $387.36 |
| Plus tax | 7.75 |
| | $395.11 |

"Pay to Order
"O. K.—E. T. Philpott
"Pd. 9-21-35"

Grazier then went to the secretary of the board, Mr. Becherer, with the approved bill who issued a warrant payable to the company for the full amount due for this car load of 53 tons, 1600 pounds of coal. The defendant signed this warrant as president.

For some reason, the defendant had all the original scale tickets made out as the coal was weighed and hauled to the schoolhouses. The day after the coal was delivered to the defendant, Grazier went to the defendant's home and told him that Mr. Becherer wanted the scale tickets and further said, "Ed, this is going to get us in trouble. You had better pay for that coal." The defendant replied that Grazier need not worry as it wasn't going to hurt him any and that he, defendant, had too many friends on the school board and in Grove Township. Grazier then tried to persuade defendant to reimburse the school board and he refused to do it.

On November 14th, Grazier went to defendant's home and again told him he must have the weights for the coal as he was subpoenaed to the grand jury. The defendant then said to Grazier, "You go down there (to the grand jury) and tell them you hauled three loads of coal to the Hunter School House, the Wyant School House and Number 7 school house and they can't prove any-thing on me." From the original scale weights they then made out tickets for the coal delivered to the schoolhouses and for three loads that were not delivered to the above named

1340

three schoolhouses. Defendant told Grazier to date the tickets for the three loads supposed to have been delivered to the said three schoolhouses "ahead of the school coal."

At this meeting, Philpott stated, "I will give you a check and when you get to town you mark on it, paid $25.00 one time and $20.00 another and put the dates on there so it will not be on Sunday. Do that and it will help cover this up and show I paid for my coal." Grazier then made out a check for the amount due for the coal which he dated September 20, 1935, and placed the two credit entries on the back of the check. This check was drawn on a bank in which defendant had no funds and Grazier testified that Philpott did not pay for the coal at any time.

In regard to this check, the defendant testified that he did not have an account in the drawee bank, had made no arrangements for the payment of this check and did not have an account in any bank. Newton Aldredge testified for the State that when the second load of coal was taken to the defendant's home, the defendant stated that "he was getting his coal for nothing. That if Grazier wanted to get hard with him he would get hard too. As long as he was getting his coal for nothing, he would be good if Grazier was." The witness also testified that he was present at the lumber yard when the third load was weighed and heard the defendant ask Grazier if his coal was weighed and to figure it up and he would write him out a check and that the check was written out.

The witness further stated that when the last load was delivered Philpott furnished him and Marshall a half-gallon of beer and remarked, "What people don't know won't hurt them." The contract called for Franklin County Illinois coal. The coal furnished the school was Saline County coal. Earl Marshall, who helped haul the coal, testified that the defendant, while the coal was being hauled, had the contract for the coal sold the school district and stated to him during the time the coal was being hauled that "He had a contract for Illinois, Franklin County coal and that they sent him a cheaper grade of coal and to take some coal out to his place and that would straighten things up." Defendant also told the witness that the schoolhouses had bought the car load of coal. The witness Marshall also testified that defendant stated to him that he had kept away from the Governor of Oklahoma and wouldn't get in any Taylor County trap.

Such is the substantial part of the State's evidence that bears on the question of the ownership of the coal by the school district and the intention of the defendant to steal the coal when received by him and his knowledge that it belonged to the school district.

The real inquiry was, did the defendant steal the three loads of coal from the school district?

We stated in State v. Congrove, 109 Iowa 66, 80 N. W. 227, "the purpose in averring ownership in another is to negative title in the accused, and to advise him of the charge lodged against him. Ownership in some one other than the defendant, and not any particular person, then, is of the essence of the crime." The State's evidence in chief tended to prove that the ownership of the coal was in some one other than the defendant, that defendant knew it did not belong to him and that the district was the owner of or had the right of possession to the coal when delivered to defendant.

■■■ Code section 13732-c11 provides that an allegation in an indictment of ownership of property is supported by proof of possession or right of possession of such property. State v. Potter, 195 Iowa 163, 191 N. W. 855; State v. Congrove, 109 Iowa 66, 80 N. W. 227. The defendant urges that the indictment did not identify the Grove Township School District as a copartnership or corporation and did not correctly describe the corporation which was the Grove School District Township. Defendant could not possibly have been misled or prejudiced by this variance in names and it was not material to defendant whether the district was a copartnership or corporation. State v. Fogerty, 105 Iowa 32, 74 N. W. 754; State v. Congrove, supra.

This evidence tended to support the State's theory and the trial court did not err in overruling the motion for a directed verdict.

■■■ IV. The defendant testified that when Mr. Grazier brought him the bill for the 53 tons, 1600 pounds of coal that he asked Mr. Grazier if the bill included the coal delivered to him and Mr. Grazier replied that it did not, and that he did not attempt to compute the number of pounds of coal delivered to him and the township, relying on Mr. Grazier's statement.

The defendant was then asked:

"Q. Now Mr. Philpott, you may tell the jury why you did

not attempt to compute the number of pounds you got and why you did not attempt to compute the number of pounds Mr. Grazier said he was taking to the district schools.''

The objection to the question was sustained. The defendant, in the absence of the jury, told the court that he expected to show that before any of these transactions he had a severe paralytic stroke that practically deafened him in one ear and practically blinded him in one eye and that since that time he had not tried to do any figuring or computation and depended exclusively upon others.

The Court: ''I will permit you to ask him in regard to his mental and physical condition at that time, whether he could compute the amount of this coal or not. Let him answer.'' After some discussion, the court further said, ''Now Mr. Wisdom, I don't know whether you understood what I told you in regard to this evidence. I am telling you I will permit you to offer evidence in regard to the physical and mental condition of this witness with respect to figures if you want to present it.''

''Mr. Wisdom: I am still standing on my question that I propounded to this witness and I believe in justice I am entitled to have it answered and proceed to make the showing.''

Counsel for defendant refused to proceed as suggested by the court and elected to stand on the court's ruling on the question propounded to the witness. The trial court gave defendant's counsel permission to enter the very field that counsel desired to enter and by rejecting the privilege accorded him by the court, he is precluded from complaining of the ruling.

■■■ V. At the close of the testimony, the defendant moved the court to submit ten interrogatories to the jury which motion was overruled. The defendant predicates error on the refusal of the court to submit the interrogatories and relies on Code section 13916 and State v. Near, 214 Iowa 1083, 1087, 243 N. W. 519, and State v. Kelly, 164 Iowa 42, 144 N. W. 993, as authorities for submission of the interrogatories. Code section 13916 reads as follows:

''It must also return with the general verdict answers to special interrogatories submitted by the court upon its own motion, or at the request of the defendant in prosecutions where the defense is an affirmative one, or it is claimed any witness is an

accomplice, or there has been a failure to corroborate where corroboration is required.''

The defendant's plea was not guilty and no affirmative defense was presented by the defendant. During the trial the defendant made no claim that Grazier or any other witness was an accomplice. The majority of the interrogatories were addressed to the main proposition of the defendant that the coal was delivered to him under his personal contract for the purchase of coal from the company. None of the interrogatories concerned or inquired into any matter contemplated by Code section 13916. In the Near case, supra, no affirmative defense was pleaded or proved and the court held the submission of the interrogatories was not mandatory. In the Kelly case, supra, the defendant interposed the affirmative defense of insanity. These cases do not aid the defendant in his contention and the interrogatories were not within the provisions of section 13916. The refusal of the court to submit the interrogatories was not error.

VI. The defendant complains that the court erred in refusing to give the defendant's requested instructions numbers 3 to 6, inclusive. These instructions embodied defendant's theory of the case which the court adequately presented to the jury in his instructions. No exceptions were taken to the refusal of the court to give the instructions, and the alleged error will not be considered for the first time on appeal.

■■■ VII. The defendant contends that the court erred in giving instructions 1 to 7, inclusive, which refer to the Grove Township School District, for the reason that there is no such company, corporation or quasi-corporation lawfully identified by the name of Grove Township School District, the instructions assuming the existence of such an owner, when in fact, there was no such corporation.

Under Code section 4124 providing for the names of school corporations, the correct name of the school district was the School Township of Grove in the County of Taylor, State of Iowa. During the trial this school corporation was referred to by many different names. The defendant called it the ''Grove Township School''. The bill for the coal was to the ''Grove Township Schools''. The contract for the coal was with the ''Grove Township School Board''.

Code section 13732-c16, subdivision 3, states it is sufficient

for the purpose of describing a corporation to state the corporate name of such corporation, or any name or designation by which it has been or is known or by which it may be identified without an averment that the corporation is a corporation or that it was incorporated according to law.

The designation of the corporation in the indictment as the Grove Township School District was by the name it was known and was proper and the proof by the State that the coal was sold to the Grove Township School District conformed to the allegations in the indictment. The defendant did not attack the indictment. The designation of the corporation in the indictment as the ''Grove Township School District'' rather than the ''School Township of Grove'' could not under this record have misled or prejudiced the defendant. We conclude there was no variance prejudicial to the rights of appellant. See State v. Bartlett, 128 Iowa 518, 105 N. W. 59.

VIII. Defendant objected to instruction No. 9, which told the jury that if it found the defendant guilty it would be its duty to ascertain from the evidence the value, if any, of the property, on the ground that the undisputed evidence showed that defendant bought coal from the John Anderson Lumber Company and that neither the title nor possession passed from the company except to the defendant under this contract and therefore there was no evidence upon which the jury could find the defendant guilty. We have held against the defendant on this contention and the court was right in giving this instruction.

IX. Instruction No. 10 is as follows:

''In regard to the fifth essential, that such taking by the defendant, if proven, was with the intent to steal and appropriate such chattels to his own use, you are instructed: That the taking must be without color of right or excuse for the act. If you find from the evidence, beyond a reasonable doubt that defendant took said property or caused the same to be taken, knowing that it was not his own but the property of another, and knowing that he had no authority or right to take such property and appropriate the same to his own use, such taking is a felonious taking within the meaning of the law, and if you so find in this case, then on this issue you should find for the State.''

The defendant objected to this instruction for the reason that it assumed that the defendant took the coal from some per-

son or corporation other than the John Anderson Lumber Company.

In a prior instruction, the court told the jury the essentials of the crime of larceny which the State was required to establish among which elements was the following:

"2nd. That the property was the property of the Grove Township School District."

The instructions must be read together and instruction No. 10 correctly stated the law on intent applicable to this case and is not vulnerable to the objection made.

■■■ X. What we have heretofore stated in this opinion disposes of defendant's objection to instruction No. 11. Defendant objects to that part of instruction No. 14 which reads as follows:

"You are instructed that when it is successfully proven that a witness who has testified is a person whose general reputation for truth and veracity in the community in which he resides is bad, such witness is deemed in law to be impeached, and the jury would be justified in entirely disregarding the testimony of such witness."

The balance of the instruction reads as follows:

"But if the witness has as to certain matters in his testimony, testified consistently and is corroborated as to material points by other facts and circumstances shown upon trial by witnesses who are unimpeached, then as to such matters of testimony so testified to by the impeached witness, you would not be justified in disregarding them, and would test the weight of such testimony and measure the credibility of such impeached witness the same as any other witness, so far as such corroborated testimony is concerned. The defendant in this case has been a witness in his own behalf, and is subject to be impeached the same as any other witness."

The complaint of the defendant is that this instruction fails to tell the jury that witnesses for the defendant stated that the reputation for defendant for truth and veracity was good and that it should consider such favorable testimony along with the unfavorable testimony.

The jury heard the testimony of all the witnesses who testi-

fied to the reputation of the defendant for truth and veracity. The trial court in the instruction referred neither to the State's nor to the defendant's witnesses. The instruction did nothing more or less than leave the question of impeachment of the defendant to the jury. This instruction was followed by correct instructions on the competency of the defendant as a witness in his own behalf and the determination of the credibility of all the witnesses. Instruction No. 14 was approved by this court in the case of State v. Haberle, 72 Iowa 138, 33 N. W. 461. There was no error in this instruction.

■■■ XI. The defendant contends that the court committed reversible error in failing to instruct the jury that W. R. Grazier was an accomplice and to instruct the jury that the defendant could not be convicted unless Grazier's testimony was corroborated by other evidence.

If Grazier was connected with this crime in any manner, it was as an accessory after the fact, and an accessory after the fact is not an accomplice to the main crime. State v. Jones, 115 Iowa 113, 88 N. W. 196; State v. Farris, 189 Iowa 505, 178 N. W. 361; Code section 12896.

No request was made by the defendant for such an instruction and no exception was taken to the failure of the court to so instruct. A judgment of the trial court will not be reversed for an error in giving or failing to give instructions to the jury where objection to the error is not made and exception taken at the time it is committed. This court has repeatedly refused to consider propositions which were not presented to or passed upon by the trial court. State v. Hathaway, 100 Iowa 225, 69 N. W. 449; State v. Shearer, 206 Iowa 397, 220 N. W. 13; State v. Bingaman, 210 Iowa 160, 230 N. W. 394.

XII. The defendant predicates error on the cross-examination of his witnesses who testified that the reputation of the defendant for truth and veracity was good.

No objections were interposed by the defendant to the cross-examination, and at the request of the defendant, the court gave instruction No. 1 which admonished the jury to disregard the evidence.

In the absence of objections we will not generally reverse. State v. Conroy, 126 Iowa 472, 102 N. W. 417; State v. Ostby, 203 Iowa 333, 210 N. W. 934, 212 N. W. 550; State v. Slycord, 210 Iowa 1209, 232 N. W. 636.

One of the defendant's reputation witnesses was asked on cross-examination:

"Q. Did you hear that in the case of State against Buttel, tried in this court, that he was impeached in regard to his truth and veracity? Did you hear that talked around Sharpsburg?"

This question was objected to as not proper cross-examination and objection was overruled.

"A. No. I did not hear that."

This was proper cross-examination and furthermore this same question was asked other character witnesses of the defendant on cross-examination and answered without objection.

The defendant asks a reversal because of prejudicial misconduct on the part of the county attorney in his opening argument in referring to the grand jury. The court heard this argument, and under the circumstances, held that the remarks were not objectionable and admonished the jury to remember their oath of office as jurors to determine the case solely on the evidence and the instructions of the court. We conclude the argument objected to did not constitute reversible error.

We have read the entire argument of the county attorney. It was his duty to make the most of his case and he is allowed reasonable latitude in drawing deductions and inferences from the evidence. We find that the county attorney kept substantially within the bounds of the record and confined his argument to fair comment on the evidence and reasonable inferences drawn therefrom.

The defendant did not challenge the closing argument of the State when made, and no objections were made so there could be a ruling of the court and no consideration can be given defendant's complaint to the closing argument.

Upon the whole record, we conclude that the defendant had a fair and impartial trial, and finding no error in the case, the rulings and judgment appealed from are affirmed.—Affirmed.

ANDERSON, PARSONS, KINTZINGER, DONEGAN, SAGER, and HAMILTON, JJ., concur.