STATE OF IOWA, Appellee, v. FRED KELLER, Appellant.

**LARCENY: Insufficient Evidence.** The naked fact that, soon after a larceny, the accused was in the company of one who had the stolen property in his possession, and was in the immediate vicinity of where the possessor sold it, is quite insufficient to sustain a verdict of guilty.

*Appeal from Woodbury District Court.*—J. W. ANDERSON, Judge.

JUNE 21, 1921.

THE appellant was indicted for the alleged larceny of an automobile, and upon trial to a jury was found guilty. From the judgment entered on the verdict, he appeals.—*Reversed.*

*Kephart & Tomlinson,* for appellant.

*Ben J. Gibson,* Attorney General, and *B. J. Flick,* Assistant Attorney General, for appellee.

WEAVER, J.—A Ford automobile, owned by the complaining witness, H. G. Polling, was stolen from the city street in front of the owner's place of business on May 7, 1919. There is no direct evidence of the actual taking or of the identity of the thief or thieves. A short time thereafter, one Ivers, accompanied by the defendant, Keller, and a third person, drove the car from Sioux City, a distance of about 30 miles, to a point in Plymouth County, where Ivers sold it to one Weyen. Later, the car was identified and returned to the owner, and Ivers and Keller were jointly indicted for the larceny.

On the trial of the appellant, Keller, the testimony on part of the State was very brief, and, in substance, as follows: Polling, the owner, testified simply to his ownership of the car and to the fact of its theft, but had no knowledge by whom it was committed. Weyen, the purchaser of the car, testified:

"I purchased a Ford automobile from Tom Ivers. * * * The other men with him did not say anything about selling the car. I gave Ivers a check for it. * * * I gave the check to Ivers. The other men were not there when I gave him the check. Think they were in the house when he told me his name was Brooks. I would not be positive about it. When Ivers came up, he said he had a Ford to sell. Said his name was Brooks. When they came in here, I think the other two fellows was in the road a little while. Me and Ivers went to Craig and got the money; the other two fellows stayed at my place. The whole deal of buying the car was made with Ivers. I didn't know who the other men were. Could not swear that Keller was there. I think Ivers told me he bought the car in Sioux City."

One Danielson, chief of detectives, called by the State, testified that, when Weyen brought the car to Sioux City, and Ivers and Keller were brought into his office, they spoke to Weyen, and Weyen said they were the ones who were at his place.

"Weyen said he gave the check to Brooks, as he called him. After Weyen had identified him, Ivers admitted that him and Keller had been at Weyen's place. Ivers said he had stolen the car, and that Keller was with him. I talked to Keller about the matter, and he told me that they drove the car up to this man and sold it to him. Ivers said that Keller didn't have anything to do with it at all."

The foregoing constitutes all the evidence offered by the State.

For the defense, Ivers testified to alleged facts tending to show that he came into possession of the car honestly, but admitted that he sold it to Weyen. He further said:

"I did not know it was a stolen car. Fred Keller had nothing to do with the matter of this car, selling it. He did not share the money I got for it. I just asked him to go along for a ride. * * * Keller and a fellow we called Shorty went with me to Weyen's. I told him my name was Brooks. Keller didn't hear this."

For himself, the defendant says:

"Live in Sioux City. Was in the army eight months. Discharged at Fort Riley, April 12th. I didn't have anything to do with this car. Didn't know it was stolen. Tom asked if I wanted to take a little ride, if I wasn't doing anything, and so I went with him. I did not sell the car; did not steal it; did nothing more with it than riding up there; did not get any money from its sale; don't know how much Weyen paid Ivers."

This is all the material evidence in the case.

Appellant's motion for a directed verdict in his favor because of the insufficiency of the evidence was overruled, and the jury, after being charged by the court, returned a verdict of guilty as charged.

In our opinion, the motion to direct a verdict of not guilty should have been sustained. While it is possible that the appel-

lant had some guilty connection with the theft of the car, such mere possibility is not evidence of the fact. Aside from the admitted fact that this defendant was riding in a car which was being operated or driven by another person who is alleged to have stolen it, there is not a shred of evidence fairly tending to connect him with the offense; and this, alone and of itself, is wholly inadequate to support his conviction of the alleged theft. So far as appears by the record, he never saw the car or knew of its existence until he saw it in the hands of Ivers, on the day of its sale to Weyen. Proof that he rode in the car at the invitation of the driver, exercising no control over its movements and doing no act inconsistent with the attitude or conduct of a mere passenger or guest, is not evidence of possession which will subject him to the presumption or inference of guilt of the larceny, if it shall appear that such car has recently been stolen. The fatal weakness of the State's case is too apparent to require further discussion.

Appellant also assigns error upon the charge of the court with reference to the effect of evidence tending to show possession by an accused person of property recently stolen; but, having found that the State has failed to make a case to sustain a conviction, we shall not discuss or pass upon the technical accuracy of the abstract rule formulated in the instructions complained of. For the reasons stated, the judgment appealed from is reversed and cause remanded for further proceedings not inconsistent with this opinion.—*Reversed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.