---

(No. 14030.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM BULLION, Plaintiff in Error.

*Opinion filed October 22, 1921.*

1. CRIMINAL LAW—*when it is error to permit State's attorney to cross-examine witness for People as to statements implicating the defendant.* Where the State's attorney has called a witness who unexpectedly testifies that he himself committed the offense charged against the defendant, and that it was he and not the defendant who ran away from the police officers, it is error to permit the State's attorney to cross-examine the witness in an attempt to show that the witness had made statements in the State's attorney's office, when the defendant was not present, tending to implicate the defendant.

2. SAME—*possession of stolen property must be recent to be evidence of theft by the possessor.* Possession of stolen property, where it is so remote in time as to have given fair opportunity for the thief to dispose of the goods and for the defendant to acquire them honestly, is slight, if any, evidence of guilt, and the weight of such evidence is a question for the jury.

3. SAME—*possession of stolen goods must be exclusive in accused to be evidence of guilt.* In order that an inference of guilt may be drawn from the unexplained possession of goods recently stolen the possession must be exclusive on the part of the accused.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

IRWIN R. HAZEN, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

William Bullion was convicted of the crime of burglary and has sued out a writ of error to reverse the judgment.

On April 9, 1918, Dwight H. Perkins returned to his home in Evanston about eleven o'clock in the evening and saw a Ford car, without lights, in front of his house, with the curtains down. The next day he discovered that the lock on the rear door of his garage had been broken and two tires had been stolen. He notified the police of his loss and a few days later received a card from a police officer asking him to call at the police station. He did so and found his tires there and took them home. On April 19 Harry R. Potts, a police officer, was riding a motorcycle on the street when a Ford car loaded with tires passed him. He drove alongside the car and told the driver to pull up to the curb. Instead of doing so the driver tried to run him into the opposite curb. There were two men in the car. Joseph Hardyce was driving, and the police officer testified that the other occupant of the car was the plaintiff in error. When the officer told them to halt the men jumped out. Hardyce ran west on Belmont avenue and the other man north on Paulina street. The officer followed Hardyce, fired at him twice, shot him

in the leg, arrested him and took him to the police station. The officer did not see the plaintiff in error again until 1919. He had seen him once before, on April 16, 1918. A record was made of the tires in the machine. Perkins came, and the tires which he identified and took home were among those in the Ford car.

The People called Peter Koenig as a witness. He testified that he knew Hardyce and the plaintiff in error on April 9, 1918, but did not see the plaintiff in error on that day; that he was with Hardyce when Hardyce was shot, and that there were just the two of them. The State's attorney stated that he was surprised at Koenig's answers and asked the court to call him as the court's witness. The court refused to do so, but stated, over the objection of the plaintiff in error, that he would first give the counsel an opportunity to cross-examine the witness. In answer to a question of the court Koenig stated that he was not with Bullion in a Ford car on April 9 but was with Hardyce; that he broke into the garage and Hardyce was with him and no one else. Then, in answer to a question of the State's attorney, he said he had made a statement in April, 1918, in the State's attorney's office, to Barnhardt and Murphy, under certain conditions. He was then asked whether or not at that time he did not say to them that he, Bullion and Hardyce went to Evanston in a Ford car and broke into a garage out there. The defendant's objections were overruled, and he answered, "I don't remember." He further answered that he said at that time that he broke into the garage and got six tires and that Joseph Hardyce and himself were in the garage. He was also asked if at that same time the question was not asked, and if he did not answer, that after they got through with that garage they made another garage that same night right in that neighborhood. An objection to this question was overruled, and he answered, "Yes." The defendant denied that he was at Perkins' garage on April 9, 1918, that he ever took any tires from it,

and that he was in the car which officer Potts stopped when Hardyce was arrested. He testified that on that afternoon he was working for his brother at Milwaukee and Western avenues, in the garage business, and on the night of April 9, 1918, he was working at the same place, though he did not say where he was at the time Perkins' garage was robbed. He denied taking any of the property or being present when it was taken. He said he was not acquainted with Hardyce, though he knew him when he saw him, and he had known Koenig for about four years. He enlisted in the motor transfer service in April, 1918, went to Jefferson Barracks, Missouri, then to Jacksonville, Florida, and then to France, where he was about fourteen months, and was later discharged at Chicago in September, 1919.

It is insisted that the court erred in permitting the State's attorney to cross-examine the witness Koenig in regard to the statement made in the State's attorney's office. The evidence against the plaintiff in error was entirely circumstantial, and the only evidence which tended in any way to connect him with the commission of the burglary was the testimony of the officer in regard to his being with Hardyce in the car containing the stolen tires at the time Hardyce was arrested and his jumping out of the car and running away. He denied that he was in the car, and as far as his identity was concerned it was a question of veracity between him and the police officer. It is true that Koenig testified that he and not the plaintiff in error stole the tires, and that it was he and not the plaintiff in error who was with Hardyce at the time Hardyce was shot and arrested, and he denied that he made some of the statements which he was asked about, tending to incriminate the plaintiff in error, though to the question whether in the State's attorney's office he did not say that he, Bullion and Hardyce went to Evanston in a Ford car and broke into a garage out there, his answer was that he did not remember. The statements of Koenig made at that time were under no circumstances

competent evidence against the plaintiff in error. There was no purpose in asking questions in regard to them except to prejudice the plaintiff in error and affect his credit as a witness. While Koenig in part denied the making of the statements tending to incriminate the plaintiff in error which were suggested by the questions asked him, he was a self-confessed criminal, guilty of the burglary and theft with which the plaintiff in error was charged, and the effect of his examination as to these incompetent matters amounted to a declaration by the State's attorney that Koenig had implicated the plaintiff in error in the theft, that they were associates in the crime, and that Koenig was seeking to protect the plaintiff in error against the consequences of the crime. This evidence was wholly incompetent. It introduced into the case a matter which the jury had no right to consider, and its only effect was, where there was a sharp conflict in the evidence between the defendant and the police officer, to cast into the scale against the defendant the insinuation of the State's attorney that the defendant's accomplice in crime had implicated the defendant in his statement and was now seeking to escape the consequences of it by denying the making of the statement. The whole subject of this cross-examination of Koenig was foreign to any matter which the jury might properly consider, and its effect was necessarily very damaging to the defendant, against whom the evidence was entirely circumstantial and whose credibility as a witness was vital to his defense.

The court instructed the jury that "the recent and unexplained possession of stolen property by the defendant, if the evidence so shows, tends to establish his guilt and is sufficient, of itself, to authorize a conviction, unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence, so as to raise in the minds of the jury a reasonable doubt of such guilt." The possession of stolen property which is evidence of theft is possession soon after the crime and must be the exclusive possession of

the individual charged. The possession must be so recent as to indicate that the possessor must have taken the property, and where it is so remote in time as to have given fair opportunity to the thief to dispose of the goods and to the defendant to acquire them honestly, possession is slight, if any, evidence of guilt, and its weight is a question of fact for the consideration of the jury and not to be determined as a question of law by an instruction that the evidence is sufficient to convict. *(People* v. *Kubulis,* 298 Ill. 523.) The rule is also established that in order that an inference may be drawn from the unexplained possession of goods recently stolen it must be an exclusive personal possession on the part of the accused. *(Watts* v. *People,* 204 Ill. 233; *People* v. *Lardner,* 296 id. 190; *People* v. *Kubulis, supra.)* In this case the tires were not found in the Ford automobile until ten days after the commission of the burglary, and it cannot be said that they were then found in the possession of the plaintiff in error. There was no evidence that the Ford car in which they were found was the Ford car which was near the Perkins garage at the time of the burglary or was the car of the plaintiff in error. Hardyce was driving the car, and this might indicate that it was his car and not the car of the plaintiff in error. It is not shown that the plaintiff in error had any connection with the car or the tires except as a passenger in the car, without any control over it or its contents. The effect which should be given to his flight when the officer ordered him to stop was a question for the jury, and under all the circumstances in this case the instruction to the jury that the possession of stolen goods was sufficient to justify the conviction of the defendant was misleading and should not have been given without instructing the jury as to the character of the possession which was required, both as to its recent date after the crime and the exclusive control by the plaintiff in error.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*