State of Iowa, Appellee, v. J. W. Blake, Appellant.

No. 39249.

October 23, 1928.

Rehearing Denied September 21, 1929.

*J. T. Keenan* and *Roseberry & Roseberry,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

Evans, J.—I. The record before us discloses no marked conflict in the evidence. The more important question presented, and the principal one argued, is whether the evidence in the record is legally sufficient to sustain the verdict of guilty. It appears that, on the night of September 27, 1927, 20 sacks of sugar were stolen from the storehouse of Beck Company at Remsen, Iowa, a town 10 miles distant from the city of LeMars, and in an easterly direction therefrom. Blake was a resident of LeMars. He was engaged as a traveling salesman for the Rawley Company. In the forenoon of September 28th the defendant and George Hart, jointly indicted with him, came together in Hart's automobile to the town of Struble, situated 9 miles north of LeMars. In the automobile were 7 sacks of sugar, later identified as a part of the stolen property. The town of Struble was upon the route of the defendant, and he was well acquainted there. He proceeded to solicit, and did procure, buyers for the sugar. It was sold at a price substantially below the market. The explanation made to purchasers was that a raid had been made by officials upon a still at some other place, and that the sugar had been saved from the

seizure. Such was the explanation made by Hart to Blake. For the sugar thus sold, the defendant received checks from the purchasers, payable to his own order. These checks were later cashed at the bank by the defendant. He testified, however, that he paid the proceeds to Hart. At the time that Blake solicited the purchasers, he did not have the sacks of sugar immediately at hand. That is to say, they were in the automobile. The automobile belonged to Hart. Shortly after the purchasers were secured, both Hart and defendant appeared in the automobile and delivered the sugar from the automobile to the purchasers. In this delivery Hart and defendant both joined. The verdict of guilty was necessarily predicated upon the fact of the possession of the stolen property, as herein set forth.

As against this evidence, the defendant showed first by quite persuasive evidence, and some of it by apparently disinterested witnesses, that he was not absent from his home at any time during the night of September 27th. His explanation of his connection with the stolen property was that he first saw it in the possession of Hart in the forenoon of September 28th; that Hart first solicited him to buy the same, and afterwards requested him to aid him in selling the same. It was in response to this request of Hart's that Blake accompanied him in his automobile to the town of Struble, and assisted him there in selling the same to Blake's own customers. He produced a witness who was in charge of the Sinclair Oil Station at LeMars, and who testified that Hart came to the oil station on the morning of September 28th from the east, and purchased gasoline for his automobile; that the sacks in question were in his automobile at that time; and that Hart was in sole possession. It was shortly thereafter that Hart came to the home of defendant Blake, according to Blake's testimony. It appeared also from the testimony of the witnesses for the State who had been solicited to buy the sugar that the defendant did not claim to own the sugar, but purported to be selling it for Hart. The purchasers also testified that they drew their checks to the order of defendant because they knew him, and did not know Hart.

Some circumstances were put in evidence by the State which tended to impeach the explanation. The witness Pesch was one of the persons solicited to buy. He did not buy. He testified:

"I asked him where he got it, and he just nudged me, like that [indicating], and he said, 'Enough said,' and he walked out."

Another circumstance occurred some days later, on the following Saturday. The sheriff was investigating the crime committed at the Beck warehouse. He interviewed the defendant in the office of the county attorney. Concerning such interview he testified as follows:

"I asked Mr. Blake what he had been doing, and he said he had been home all that night. He said he traded a car of his to a garage in Sioux City, and got sugar in part payment. He admitted he had been selling sugar, and said he got it from a Jew down there. Then he said Hart and he got the sugar in Sioux City. He said Hart got it. Said Hart wanted him to help him sell the sugar. He said they went up to Struble to sell the sugar. He said they went up in the forenoon. He said they took it up in the forenoon, about 10 o'clock or 11 o'clock, as near as I can remember it."

It is the argument for the State that the foregoing was an inconsistent explanation. The defendant concedes that he attempted to deceive the sheriff in the first instance because he feared that he might become involved in a liquor prosecution, if he should disclose that the sugar was a part of the stock used in the operation of a still. The foregoing presents the material features of the evidence. The defendant contends that it does not establish possession in him, within the meaning of the rule that permits an inference of guilt of the larceny. We think the evidence of his actual possession was sufficient, and that the sufficiency of his explanation of such possession was a question for the jury.

II. The defendant complains of certain instructions given by the court. In Instruction 8 the jury were instructed that, if the fact of possession was established, they had the *right to infer* from such possession that the defendant participated in the larceny. The complaint here is directed to the use of the word "right." The argument is that the jury has no "right" of any kind beyond the performance of its duty under the law. The

argument puts a strained interpretation upon the word. If the instruction had said that the jury "may infer," the instruction would have been unassailable in its phraseology. It was exactly in this sense that the word "right" was used in the instruction. Such meaning is often attached to it in common parlance. The jury could not have understood it otherwise.

III. In Instruction 9 the court used the following language:

"* * * nor can such inference be drawn by you if the circumstances relating to such possession or the explanation made thereof *satisfy* you that the defendant came into such possession in some manner other than that charged in the indictment, or are sufficient to leave in your mind a reasonable doubt that said defendant stole, or participated in stealing, said property."

The particular complaint is directed to the use of the word "satisfy." It will be noted that this part of the instruction was restrictive and precautionary, and was intended for the protection of the defendant against an unwarranted inference of guilt from the mere fact of possession. It laid no burden of proof upon the defendant. It simply cautioned the jury that guilt must not be inferred from the fact of possession, if the explanation of the possession was either satisfactory or sufficient to raise a reasonable doubt in their minds of the guilt of the defendant. We think the instruction was not objectionable on the ground urged.

IV. Complaint is made of Instruction 9½, wherein the court instructed as follows:

"The possession of the property referred to in these instructions, and particularly in the last two preceding numbered paragraphs hereof, need not be the sole possession of the defendant, J. W. Blake. If it is by you found beyond a reasonable doubt that said property was in the joint possession of the defendant, J. W. Blake, and another, for the use and benefit of the defendant, J. W. Blake, or for the use and benefit of said defendant and another jointly, then, in that event, said property is, for the purposes of this case, to be deemed to have been in the possession of the defendant, J. W. Blake. But if such connection as the defendant Blake may have had with the possession of said property

was merely in behalf of the George E. Hart referred to in the testimony, and not on his own account, except for such remuneration as he might expect to receive for his services, or if you have a reasonable doubt that the defendant Blake was in possession thereof on his own account, other than for such expectation of remuneration for services rendered said Hart, then you should acquit the defendant Blake.''

The contention for the defendant is that ''possession,'' within the meaning of the rule of inference of larceny, must be exclusive in the defendant, and not otherwise. If such contention were sustained, then a joint larceny could never be established against two or more perpetrators thereof by finding the stolen goods in their ''possession.'' The material question is not whether some other person was concerned with the defendant in the same larceny and in the same possession, but whether the defendant himself was in possession of the property, regardless of whether such possession was exclusive or joint. If the circumstances were such as to present a doubt as to whether the possession was that of one or that of another, where no co-operation or joint conduct was disclosed, a different question would be presented. In this case, Hart and the defendant were co-operating in the possession of the property,—at least, the circumstances were such as to justify the jury in so finding. We think the complaint against this instruction is not well founded.

Upon the record before us, there is considerable ground for plausible argument in favor of the defendant. Such argument was peculiarly for the consideration of the jury. We see no way properly open to us to interfere with its verdict.

The judgment of conviction is, accordingly,—*Affirmed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.