STATE of Iowa, Appellee,

v.

Carleton **KITTELSON**, Appellant.

No. 52889.

Supreme Court of Iowa.

Jan. 14, 1969.

Frank R. Miller, Decorah, for appellant.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and F. E. Sharp, County Atty., Elkader, for appellee.

BECKER, Justice.

On March 16, 1965 defendant was tried on county attorney's information charging larceny in the nighttime, Iowa Code, 1966, section 709.11, from the Huniker Garage in Monona, Iowa on August 23, 1964. Upon final submission the court also instructed on and submitted both the crime of larceny in an amount of more than $20 and of larceny in an amount of $20 or less, Code, sections 709.1 and 709.2. Larceny in the daytime, Code, section 709.5 was not submitted. The jury found defendant guilty of larceny in the nighttime. He was subsequently sentenced to ten years and committed to the Iowa State Penitentiary at Fort Madison.

After notice of appeal had been filed defendant's then attorney filed application to withdraw as attorney of record. This application was granted and defendant was given 30 days to obtain new counsel. No request was made for court-appointed counsel. Defendant did not get new counsel. The appeal was submitted to this court on clerk's transcript and affirmed by per curiam opinion dated January 11, 1966, Iowa, 139 N.W.2d 468. Subsequently, on petition for writ of habeas corpus, the district court for the first judicial district held defendant had been denied an appeal with a full record and ordered defendant returned to Clayton County for the purpose of granting defendant the right to appeal his March 24, 1965 conviction. The habeas corpus judgment was not appealed. This court then determined that under the peculiar circumstances of this case a delayed appeal would be granted.

Defendant's present court-appointed counsel assigns numerous grounds for reversal. Summarized, the State's evidence was as follows:

Winneshiek County Deputy Sheriff Melvin Lee testified he was on patrol duty on August 22, 1964. He had been notified defendant and Gordon Formaro were in the area. They were watching a truck belonging to Formaro which they found parked in Calmar, Iowa. He and Deputy Burreson watched the truck from about 1:45 A.M. to

3:45 A.M. when they saw a Dodge car coming through Calmar on Highway 52. They followed the Dodge with their lights out. The car proceeded normally out of Calmar but then speeded up to 80 or 90 miles per hour, turned onto a gravel road and started to zigzag. The deputies saw articles thrown from the right side of the car. They turned on their red light and the Dodge car stopped.

A man named Frank Varner was in the driver's seat, Gordon Formaro was in the right front seat and defendant was lying down on the back seat. Varner told the officers he had seen an automobile following him without lights and had tried to get away.

The officers called for help and a search was conducted. The search of the roadside that night produced three sacks of spark plugs, three cans of STP oil, a clamp wrench, a screw-driver, a punch and a hammer. Sometime after 6:15 A.M. a second search was conducted which produced a four and one-half foot heavy car axle, .22 caliber revolver, a pair of gloves with three nylon stockings stuffed in them, a small white cloth sack containing a five dollar bill, a one dollar bill, some change, a silver dollar and another spark plug. The car was not searched at that time.

The officers took the three men to the county jail and at 4:30 A.M. booked them on "suspicion of burglary." At 7:00 A.M. they were charged with littering the highway. Between 10:00 and 10:30 A.M. the officers were told that Huniker's Garage in Monona had been burglarized. They investigated, found the evidence of the breakin; a broken window, empty spark plug bins, an open safe and material strewn about the floor. Donald Huniker later identified the spark plugs, oil, the money bag and the 1923 silver dollar as his property, taken from his garage. Huniker said he had locked his garage about 5:00 P.M. on August 22 and did not discover the breakin until the next day.

Defendant's evidence consisted of the testimony of Gordon Formaro and himself.

Each told of being together Saturday afternoon, August 15, 1964, driving Formaro's truck from Des Moines to Decorah where the truck developed mechanical trouble. They told of efforts to fix the truck during the following week and starting back to Des Moines on Saturday noon, August 22. The truck broke down in Calmar and they left that city. Frank Varner and defendant were using a Dodge automobile to travel with the truck at this time. The three men took the Dodge to get parts for the truck. They then went to defendant's mother's home where they spent the entire evening. Varner took the car, left "to play some pool" and returned later in the evening. At about 2:30 A.M. Sunday morning they started for Des Moines.

Formaro said his license was restricted so he didn't want to pass any city police. He had seen "an official car in Calmar"; when he saw the car following without lights he speeded up, woke up Varner and told him to switch drivers. At this time Varner reached under the seat, tossed a sack containing beer from the window and then switched places with Formaro. The latter action caused the zigzag motion of the car. Both Formaro and defendant testified they had never seen the sacks containing spark plugs nor any of the other articles found alongside the gravel road where he had been driving just before the car was stopped. Defendant said he did not see anything thrown from the car and had never seen the various exhibits. Formaro testified it took him approximately an hour and a half to drive the ten miles from Decorah to Calmar because "he didn't know the road" and wasn't traveling very fast.

The case was submitted to the jury at 1:45 P.M. on March 24, 1965. During the course of deliberation the court instructed the jury as follows:

"Ladies and gentlemen of the jury: The bailiff has delivered to me a note signed by your foreman and reading as follows:

"If Kittelson did not take part in the actual theft but did help throw it out,

or did know about it afterward—would he be guilty of larceny or of larceny in the nighttime?

/s/ Leander Stroschein
Leander Stroschein, Foreman

"The court believes that all of the instructions necessary for your enlightenment in the consideration of this case have already been given you and that the court should not add to such instructions at this time.

"You are therefore instructed to return to the jury room, read the instructions carefully, consider the evidence further, and, if possible, arrive at a verdict."

The jury retired for further deliberation and returned its verdict of guilty of larceny in the nighttime at 1:30 A.M. on March 25, 1965.

I. Defendant's first assignment of error is based on failure to direct a verdict in his favor at the close of the State's case and at the close of all of the evidence. The motion was renewed at the close of all of the evidence.

■ The assigned error raises the question of sufficiency of evidence to generate a jury question on the charge of larceny in the nighttime. Our chapter 709 deals with the subject of larceny and defines several crimes. Section 709.1 defines larceny as the stealing, taking or carrying away of any money, goods or chattels. Section 709.2 provides that when the value of the thing stolen exceeds $20 punishment shall be imprisonment in the penitentiary for not more than five years, or in the county jail for not exceeding one year, or by fine of not more than $1000, or both; when the value is less than $20 punishment shall be by imprisonment in the county jail not exceeding 30 days or by fine not exceeding $100.

Section 709.4 provides that if larceny is committed in the nighttime from any building, boat, motor vehicle or trailer when the value exceeds $20 the punishment shall be ten years in the penitentiary; if less than $20 punishment shall be by fine not exceeding $300 and imprisonment in the county jail not exceeding one year.

Section 709.5 provides for larceny in the daytime. Under that section the convicted defendant shall be punished by five years in prison if the value is over $20; and by fine of $200 and jail sentence not exceeding one year if the value is $20 or less.

■ It is apparent the time of day or night when the larceny occurs is an essential element of the crime authorizing the greater punishment. The court's instructions told the jury it was incumbent upon the State to prove beyond a reasonable doubt the taking from a building occurred during the nighttime.

■ The evidence of actual taking is circumstantial; i. e., the stolen goods were found at about 4:00 A.M. Sunday morning near where the occupants of the car were seen to have thrown articles out of the vehicle. From the evidence the Huniker Garage could have been entered at any time after 5:00 P.M. the previous Saturday afternoon. We take the judicial notice that there are several hours of daylight left after 5:00 P.M. on August 23rd.

■ Several rules germane to this appeal are found in State v. Daves, 259 Iowa 584, 585–586, 144 N.W.2d 879, 880, "On a claim of insufficient evidence to support a conviction, we view the evidence in the light most favorable to the state. The finding of guilt by the trier of fact is binding on us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. (cases cited).

■ "However, the state must prove all essential elements of the crime charged. (cases cited) * * * It is the sufficiency of the evidence connecting defendant with this crime which is challenged. To aid or abet means to assent to an act or to lend

countenance or approval either by active participation in it or by some manner encouraging it. (cases cited.) Guilt of a person charged with aiding and abetting must be determined upon the facts which show his part in the crime and does not depend on another's degree of guilt. (cases cited.)

■ "Mere presence at the scene of a crime is not enough to prove defendant committed the offense or that he did aid and abet its commission. (cases cited.)

■ "Any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. It must generate something more than suspicion, or speculation, or conjecture." (cases cited.)

■ Circumstantial evidence may be equal in value to, and sometimes more reliable than, direct evidence. State v. Manly, 211 Iowa 1043, 233 N.W. 110. Where circumstantial evidence alone is relied upon, the circumstances must not only be consistent with defendant's guilt but inconsistent with any rational hypothesis of defendant's innocence. State v. Keyser, 257 Iowa 73, 79, 130 N.W.2d 701; State v. Boyle, 230 Iowa 305, 308, 297 N.W. 312. Every essential element of the crime charged must be proved beyond a reasonable doubt and we will not allow a finding of guilt to stand where there is an absence of proof on an essential element of the crime charged. State v. Wimbush, 260 Iowa 1262, 150 N.W.2d 653; State v. Stodola, 257 Iowa 863, 865, 134 N.W.2d 920.

■ We have examined this record with care and are convinced there was sufficient evidence, direct and circumstantial, to sustain a jury finding that this breakin occurred at nighttime. Defendant and Formaro both testified as to their whereabouts from 5:00 P.M. until after midnight, and the jury could have believed this testimony. They also testified as to their whereabouts from "sometime after midnight" until they were seen in Calmar about 3:45 A.M., and the jury could have disbelieved this testimony. Decorah is nine miles north of Calmar; and Calmar is 27 miles west of Monona, all on Highway 52. Highway 24 runs southwest out of Calmar. The Dodge car, with defendant, Formaro and Varner therein, was observed coming from the east on Highway 52 at 3:45 A.M., and was followed at 80 to 90 miles per hour on Highway 24 before it turned off on a gravel road, where the stolen property from the Monona garage was thrown out and later recovered by the authorities.

It is arguable the garage might have been entered between 5:00 P.M. and dark. Taking defendant's own testimony and the entire circumstances developed at trial, this is not such a reasonable hypothesis as to require withdrawal of the larceny in the nighttime charge as an issue to be presented to the jury.

■ II. The offenses of larceny in an amount over $20 and larceny in an amount under $20 are included offenses. The evidence, circumstantial and direct, on these offenses was sufficient for submission.

As to value, Mr. Huniker testified the value of the saleable missing products was $300. If the jury accepted the testimony, as it apparently did, the higher element of damage was proved.

In State v. Horrell, 260 Iowa 945, 151 N.W.2d 526, 529, we said: "The common purpose among two or more persons to commit a crime need not be shown by positive evidence, but may be inferred from the circumstances surrounding the act and from one's conduct before, at the time of, and after commitment of the illegal act. State v. Kneedy, 232 Iowa 21, 28, 3 N.W.2d 611, and citations. In such cases the evidence which would support a conviction as a principal ordinarily would also support a charge as an accessory, for the distinction between a principal and accessory before the fact has been abrogated in this state. Section 688.1, Code, 1966. Any participation in a general felonious plan, providing that such

participation be concerted and that there is evidence of actual or constructive presence at its commission, is generally held sufficient to render one criminally liable as a principal. State v. Kneedy, supra.

"Knowledge or intent is usually inferred from the circumstances. State v. Van, 232 Iowa 34, 2 N.W.2d 748. Participation therein may be inferred from presence, companionship, and conduct before and after the offense is committed." State v. Myers, supra (253 Iowa 271, 111 N.W.2d 660), 22 C.J.S., Criminal Law, §§ 87 and 88.

■ We need not again review the evidence extensively to conclude a jury case was made on the larceny charges. The evidence showed articles thrown out of the car occupied by defendant while being chased by a police car at three o'clock in the morning, on a country road. The articles were shortly recovered and later identified as recently stolen property. This was sufficient to create a prima facie case. Formaro's and defendant's denial that anything was thrown from the car except cans of beer, their denial that they had ever seen the recovered articles, the close association of the three for a week prior to apprehension and the circumstances of the apprehension itself all serve to create a jury question when the entire case was presented.

III. Defendant notes the car did not belong to him, he should not have been held to be a person in recent possession of stolen property; and no instruction in connection therewith should have been given. The court carefully instructed the jury on the subject and told the jury of the distinction between sole and joint possession.

Defendant would have us reject the concept of joint possession citing State v. Albertson, 206 Iowa 344, 220 N.W. 39; but relying heavily on People v. Evans, 24 Ill. 2d 11, 179 N.E.2d 657, where Schaefer, J. said for the court: "In order to be of any probative value, possession of stolen property must be recent and exclusive. (People v. Meyering, 345 Ill. 598, 178 N.E. 122.)

We are of the opinion that the facts in this case do not support the conclusion that the defendant was in possession of the stolen goods. When Scott and the defendant were first stopped by the police, the defendant was not driving the car, the car did not belong to him, and he had no key which would open the trunk. The situation here is similar to that in People v. Abrams, 360 Ill. 594, 196 N.E. 801, where the State relied upon a theory of possession of recently stolen property to sustain the conviction. We pointed out that the evidence showed only that the defendant was riding as a passenger in a recently stolen automobile and held that this was insufficient to show that the defendant was in possession of the car. Here too, the evidence shows no more than that the defendant was a passenger in a car in which stolen property was later found. What was said with reference to a similar situation is pertinent here: 'It is not shown that the plaintiff in error had any connection with the car or the tires except as a passenger in the car, without any control over it or its contents.' People v. Bullion, 299 Ill. 208, 213, 132 N.E. 577, 579.

"We therefore conclude that the fact that stolen property was found in the car is not evidence of defendant's guilt."

We first note the case at hand does not involve property locked in the trunk and exclude this factual circumstance from our consideration. We express no opinion as to the applicability of the law of inference of guilt to such a situation. Much would depend on the circumstances of the individual case.

This court has said in State v. Albertson, supra, 206 Iowa at 346, 220 N.W. at 40, "The general rule in cases where recent possession of stolen property by a defendant is offered in evidence of the larceny is that the possession not only must be recent, 'but it must be personal, exclusive, and with a distinct implied or express assertion of ownership.'" (cases cited.). See also State v. Keller, 191 Iowa 740, 183 N.W. 307, where we held proof defendant was

riding in a recently stolen car was not evidence of possession which would subject him to the presumption or inference of guilt of larceny.

In State v. Blake, 208 Iowa 995, 221 N.W. 569, we specifically held "possession" within the meaning of the law of inference of larceny, need not be exclusive but may be joint, stating at page 1000 of 208 Iowa, 221 N.W. at page 571: "The contention for the defendant is that 'possession,' within the meaning of the rule of inference of larceny, must be exclusive in the defendant and not otherwise. If such contention were sustained, then a joint larceny could never be established against two or more perpetrators thereof by finding the stolen goods in their 'possession.' The material question is not whether some other person was concerned with the defendant in the same larceny and in the same possession, but whether the defendant himself was in possession of the property, regardless of whether such possession was exclusive or joint. If the circumstances were such as to present a doubt as to whether the possession was that of one or that of another, where no co-operation or joint conduct was disclosed, a different question would be presented. In this case Hart and the defendant were co-operating in the possession of the property. At least, the circumstances were such as to justify the jury in so finding. We think the complaint against this instruction is not well founded."

We also recognized joint possession of recently stolen property would give rise to an inference of guilt in State v. Horrell, 260 Iowa 945, 151 N.W.2d 526, 531, citing Gilley v. State, 227 Ind. 701, 88 N.E.2d 759, 762.

▬▬ Under the circumstances there was sufficient evidence of possession of recently stolen property to justify the instruction as given. It was for the jury to determine whether possession in this case was sufficient to permit the inference of guilt.

We believe this view to be consistent with the realities of modern transportation. See State v. Bennett, 92 R.I. 316, 168 A.2d 282.

IV. Defendant assigns as error the court's failure to distinguish between an accessory before the fact and an accessory after the fact and its failure to clarify the law in this regard when the jury asked a specific question about the matter during its deliberations.

▬▬ The State's position is that the distinction between a principal and an accessory has been abrogated in Iowa by section 688.1, Code, 1966, citing State v. Wesson, 260 Iowa 331, 149 N.W.2d 190, 194: "Clearly the jury did not believe defendant's story that he was an innocent bystander. Whether it believed he was an actual participant or an aider and abettor we do not know, but under our statute the distinction between principal and accessory has been abrogated. Section 688.1, Code, 1962." This sentence is not quite accurate. The distinction between accessory before the fact and principal has been abolished. The distinction between accessory after the fact and principal remains. State v. Jones, 115 Iowa 113, 88 N.W. 196; State v. Philpott, 222 Iowa 1334, 271 N.W. 617. We have found no case charging a defendant as an accessory after the fact nor is there any statute implementing section 688.2.[1]

State v. Fonza, 254 Iowa 630, 634, 118 N.W.2d 548, 551 states: "The distinction between a principal and an accessory before the fact has been abrogated by statute. Section 688.1, Code of Iowa, I.C.A. * * For conviction there must be evidence that the accused committed the act constituting the offense or did 'aid and abet its commission.' Mere presence is not enough. To make the defendant guilty, he must have aided or abetted, or the act must have been the result of a confederacy. State v. Farr, 33 Iowa 553, 562."

---

1. "688.2. Accessory after the fact. An accessory after the fact to the commission of a public offense may be indicted, tried, and punished, though the principal be neither tried nor convicted."

Defendant was charged as principal. Proof of guilt by aiding and abetting is sufficient for conviction as principal. Iowa Code, 1966, section 688.1. The court properly instructed on these matters. Failure to make a distinction between accessories before and after the fact did not constitute reversible error in the first instance.

The jury's note to the judge changed the situation: "If Kittelson did not take part in the actual theft but did help throw it out, or did know about it afterward—would he be guilty of larceny or of larceny in the nighttime?"

The question posed indicates the distinction between an aider and abettor and an accessory after the fact, had become meaningful to the jury even though not couched in legal terms. "The accessory after the fact is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial, or punishment." Perkins on Criminal Law, chapter 6, section 8, p. 578. The evidence of guilt was defendant's presence in the car, the stolen property thrown out of the car and close association of all the occupants prior to the arrest, Varner's absence from the other two until midnight and defendant's denial of participation in the theft could have resulted in a jury finding that while the evidence was sufficient to convict as an accessory after the fact, it was not sufficient to convict as an aider and abettor or accessory before the fact.

Section 784.2, Code, 1966 becomes especially important: "Report for information. After the jury has retired for deliberation, if there be any disagreement as to any part of the testimony, or if it desires to be informed on any point of law arising in the cause, it must require the officer to conduct it into court, and, upon its being brought in, the information required must be given as provided by law, in the presence of or after oral notice to the county attorney and defendant's counsel."

Similar statutes have been interpreted to mandate an answer by the trial court to jury inquiry. People v. Gonzalez, 293 N.Y. 259, 56 N.E.2d 574; People v. Gezzo, 307 N.Y. 385, 121 N.E.2d 380. State v. Jackson, 88 Mont. 420, 293 P. 309; 23A C.J.S. Criminal Law § 1376c, page 1000. Other cases may be cited where the court did not consider whether amplification of instructions was mandatory but none the less held failure to clarify instructions or answer the jury's questions constituted reversible error under the particular circumstances. Commonwealth v. Clark, 404 Pa. 143, 170 A.2d 847; State v. Beeny, 115 Utah 168, 203 P.2d 397; Powell v. United States, 347 F.2d 156, (1965), (9 Cir.). We do not decide the statute requires amplifying instructions in all cases. Questions may be asked which can not be answered by the court without exceeding its proper function. The trial court must make its decision in each case under the particular circumstances then existing.

The jury's question showed confusion as to the law involving accessories. It is the law of this State that an *accessory after the fact* is not a principal and is not treated as such. State v. Philpott, 222 Iowa 1334, 271 N.W. 617. If the jury found defendant an accessory after the fact the verdict of guilty under the indictment would be contrary to our law. Section 688.2, supra, provides an accessory after the fact may be indicted, tried and punished but it doesn't say how, nor does it provide a punishment. That it does not define a crime seems clear. This conclusion is reinforced by the fact the section has been in our Code since 1851 but there has never been a prosecution under it. An accessory after the fact is excluded from section 688.1 by necessary implication. State v. Jones, supra.

There are, of course, statutory crimes involving after the fact actions by individuals. Chapter 712 deals with receiving stolen goods and contains section 712.3: "Receiver convicted without principal. In any prosecution for the offense of buying, receiving, or aiding in the concealment of stolen property, or property obtained by

robbery or burglary, knowing the same was so obtained, it shall not be necessary to aver nor prove on the trial that the person who stole, robbed, or took the property has been convicted." It is such a section to which section 688 must refer.

A recent rather short case on the subject deserves mention. In State v. Leiderman, 249 S.C. 61, 152 S.E.2d 354, 355 defendant was charged with assault with intent to ravish. The Supreme Court of South Carolina said: "The inquiry of the jury related to material issue in the case and clearly indicated confusion on their part as to the applicable legal principles. Under these circumstances it was the duty of the trial judge to give to the jury further instructions responsive to their request. Failure to do so was prejudicial error."

■ When the jury asked its question, accessory after the fact should have been defined and it should have been instructed an accessory after the fact could not be convicted as an aider and abettor or as a principal. We realize the court's difficulty when a jury seeks further instructions. Nevertheless, under the statute and well-considered opinions of other courts, the trial court must seek to determine the jury's difficulty and answer its questions if it can properly do so. Powell v. United States, 347 F.2d 156, 23A C.J.S. Criminal Law § 1376, page 1000.

V. Defendant objected to the court's instruction 18A which told the jury defendant claimed alibi as a defense. He argued that no alibi had been injected into the case, the giving of the instruction was not substantiated by the record and the instruction would serve to confuse the minds of the jury.

The instruction did not contain the commonly-used statement that an alibi is an easily manufactured defense and should be viewed with caution. See State v. Wagner, 207 Iowa 224, 222 N.W. 407, 61 A.L.R. 882. It placed the burden of proof on the issue on defendant. Defendant does not now

urge the form of the instruction as reversible error. We are therefore not concerned with current state of our Iowa law regarding the propriety of placing the burden of proof on the issue on defendant. Cf. Johnson v. Bennett, 393 U.S. 253, 89 S.Ct. 436, 21 L.Ed.2d 415 (1968), 8 Cir., 386 F.2d 677; Stump v. Bennett, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466; 8 Cir., 398 F.2d 111.

■ Defendant's complaint in this assignment is that the instruction should not have been given at all because he did not proffer an alibi defense. We agree. Defendant gave no notice of intention to use alibi as a defense. This alone would not prevent the inclusion of such an instruction if the evidence offered by defendant rose to the dignity of an alibi defense. Such was not the case here.

■ Defendant's evidence, consisting of his and Formaro's testimony, does not meet or seek to establish the essential elements of an alibi; i. e., he was not at the scene of the crime and further that it was impossible that he could have been there because he was elsewhere. This matter is discussed in State v. Wagner, 207 Iowa 224, 230–231, 222 N.W. 407, 410, 61 A.L.R. 882: "Obviously this instruction should not be given when the defendant is seeking to do no more than controvert merely by way of negation the evidence of the state—when he is not attempting by proof of facts, wholly extraneous to the state's evidence that he was not only not present, but that it was impossible that he could have been present—impossible not merely because he says he was not there, but affirmatively because he was so situated or circumstanced that he could not have been there. Such extraneous affirmative facts, depending on precise date, time, place, occurrences, and conditions at such place and the relation of such occurrences and conditions to the time and place of the commission of the crime (the prosecution without opportunity to investigate), are easily manufactured. If defendant's evidence is not directed to

showing such impossibility, then he is not setting up an alibi, and his evidence ought not to be disparaged as an easily manufactured defense."

Although defendant's evidence was not disparaged the instruction should not have been given where no alibi was claimed. The evidence of defendant and his witness showed he was out in a car from *about* 2:30 A.M. to 3:45 A.M. when he was apprehended. The trip from Decorah to Monona and back to Calmar would cover approximately 68 miles. The time elements given and the distances involved were not such as to rise to the dignity of an alibi, nor do we find anywhere in the record defendant claimed that effect for his evidence. We have said giving of an instruction on alibi where not justified by pleadings or evidence is reversible error. State v. Dunne, 234 Iowa 1185, 1191–1193, 15 N.W.2d 296; State v. Steffen, 210 Iowa 196, 202–203, 230 N.W. 536, 78 A.L.R. 748; State v. Wagner, 207 Iowa 224, 227–232, 222 N.W. 407, 61 A.L.R. 882; State v. Bosworth, 170 Iowa 329, 331–340, 152 N.W. 581; and State v. Lindsay, 152 Iowa 403, 405–406, 132 N.W. 857.

■ VI. Defendant also complains of the appointment of a temporary assistant county attorney who was not a resident of Clayton County. We find no statute requiring such assistant to be a resident of the county in which he serves. Where such special assistance is deemed necessary the State should be, and is, free to seek an attorney from another county. See sections 336.3, 336.5 and 341.7, Code of Iowa, 1966 and State v. Lilteich, 195 Iowa 1353, 191 N.W. 76.

Mr. Saur, the temporary assistant, was county attorney of Fayette County and as such is alleged to have had an interest in a prosecution of the same cause there. This would not be disqualification. The prohibition against interest in section 336.5, Code of Iowa, 1966, disqualifies a county attorney or assistant when such attorney is interested in any *civil* action involving

the same matter. No such interest was shown here.

■ VII. Defendant also assigns error on the basis of the prolonged deliberation of the jury. In view of the disposition we need not pass on the assignment except to note we do not approve forcing the jury to deliberate to such a late hour. Here the verdict was returned at 1:45 A.M. Such procedure is not conducive to balanced judgment. In Kracht v. Hoeppner, 258 Iowa 912, 917, 140 N.W.2d 913, 916, we said: "We find no valid reason to require a jury to deliberate all night. If the attorneys are unwilling to agree the jurors be released under proper admonition until the next morning the jury should be furnished proper sleeping quarters as authorized by rule 202, Rules of Civil Procedure, which provides: 'Food and Lodging. The court may order the sheriff to provide suitable food and lodging at the expense of the county for a jury being kept together to try or deliberate on a cause.'"

■ VIII. Defendant objects to the admission of the hammer, punch, screwdriver and vice grip pliers found along the road at time of apprehension. These exhibits were not identified as stolen property. Nevertheless under the evidentiary picture here they were admissible. State v. Harless, 249 Iowa 530, 534, 86 N.W.2d 210, 213 states, "Instruments found in the possession of accused which, although not identified as those actually used in committing the crime, are similar in form and character thereto, or which, from the circumstances of their finding justify an inference of the likelihood of their having been so used, are admissible in evidence for the purpose of showing availability to accused of the means of committing the crime in the manner it is shown to have occurred or for the purpose of showing preparation. State v. Bales, 246 Iowa 446, 450–451, 68 N.W.2d 95, 97–98 and citations.

"State v. Schenk, 236 Iowa 178, 191–193, 18 N.W.2d 169, 175–176, approves the rule

just stated with the amplification that instruments known or conceded not to have been used in the crime are admissible where they have some probative weight or constitute part of the picture. The opinion distinguishes State v. McHenry, 207 Iowa 760, 768, 223 N.W. 535, cited by defendant here.

"State v. Alberts, 241 Iowa 1000, 1002, 43 N.W.2d 703, 705, points out that the trial court has considerable discretion in determining the admissibility of demonstrative evidence, great latitude is shown in admitting it and it is usually received if it affords a basis for a reasonable inference on a point in issue."

As to the admission of the iron bar, gun, bullets, gloves and silk stockings, the State properly cites State v. Schenk, 236 Iowa 178, 191, 18 N.W.2d 169, 176, " 'Although not directly an instrumentality of the perpetration of a crime certain objects which surround and relate to the same tend to illustrate it * * * It is well settled that things pertaining to a scene of a crime are competently offered in evidence and displayed before the jury.' Wharton's Criminal Ev., 11th Ed., p. 1288, sec. 760."

State v. Wallace, 259 Iowa 765, 145 N.W. 2d 615, is not similar. The nature of the crime charged and the circumstances shown did not justify admission of a shotgun found locked in the trunk of the car operated by defendant but owned by his mother. The exclusion was based on irrelevancy. Here the exhibits were all sufficiently relevant to sustain admission.

IX. Defendant's motion to suppress evidence on grounds there was no legal arrest and the officers had no legal cause to believe that a felony had been committed was properly overruled. Under all the facts shown here the officers acted reasonably in detaining the occupants of the car, including defendant. The applicable principles have most recently been discussed by this court in State v. Vallier, Iowa, 159 N.W.2d 406. See Annotation, 10 A.L.R.3d 314.

X. We have carefully considered each and all of defendant's assigned errors. We have discussed those errors we thought important in view of remand for a new trial. The remaining assignments of error need not be discussed in view of the disposition here made.

Defendant filed motion to strike the State's answering brief and argument. The delay was primarily caused by a pending motion by the State to dismiss defendant's appeal. When this motion was overruled the State filed its answering brief with reasonable promptness. The motion to strike is denied.

Reversed and remanded for retrial.

MASON, RAWLINGS and LeGRAND, JJ., concur.

STUART, J., concurs in all Divisions except Division V., and concurs in the result.

LARSON, J., GARFIELD, C. J., and SNELL and MOORE, JJ., dissent.

LARSON, Justice.

I respectfully dissent from Divisions IV and V of the majority opinion, and the result. As I see it, the obvious desire of the majority to grant defendant a new trial adds to, rather than dissolves, the confusion of trial courts and attorneys as to when an instruction must or must not be given. This court should try to help and guide the trial courts in the performance of that duty. Certainly they can get no help or guidance from this opinion. On the other hand, until now considerable discretion has been vested in the trial court in passing upon the propriety of instructions necessary for jury guidance when considering the guilt or innocence of one charged with a crime, and we have been slow to find an

abuse of that discretion in a ruling on a motion for a new trial. Must the trial court, without adequate guidance, now guess as to whether this court will agree with its holding that an instruction is or is not adequate, should or should not be clarified, and is or is not proper? I feel the trial court was correct in its rulings on these issues, that it did not abuse its fair discretion, and that the cause should be affirmed.

In Division IV the majority finds the trial court committed reversible error when it refused to further instruct the jury as to the significance of a finding that defendant did not take part in the actual theft but did know of it afterwards and participated in the disposal of the stolen goods. It held the jury's request called for a clarification of the law and required the court to distinguish between an accessory before the fact and an accessory after the fact. I cannot agree.

As the State points out, defendant was charged as a principal or as an aider and abettor with the crime of larceny and larceny in the nighttime in violation of sections 709.1 and 709.4 of the Code. He was not charged as an accessory either before or after the fact. In Iowa these are designated as separate and distinct offenses under sections 688.1 and 688.2, and neither is dependent upon the trial or conviction of the principal.

Section 688.1 of the Code provides: "The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals."

On the other hand, section 688.2 provides for indictment, trial and punishment of an accessory after the fact to the commission of a public offense.

The provisions of the Code thus provide that the charge of being an accessory after the fact is considered a separate and distinct offense. State v. Jones, 115 Iowa 113, 88 N.W. 196; State v. Philpott, 222 Iowa 1334, 271 N.W. 617; 21 Am.Jur.2d 200, Criminal Law, section 126; 22 C.J.S. Criminal Law § 95, p. 273.

The State's theory of the case as presented was that defendant was a principal or an aider and abettor, that he participated in the actual larceny in the nighttime and was apprehended in flight from the scene of the crime shortly thereafter.

The jury's inquiry related to the consequences of a defendant participation in *a public offense after the fact,* which was not the offense charged.

Section 784.2, Code 1966, provides: "After the jury has retired for deliberation, * * * if it desires to be informed on any point of law arising in the cause, * * * the information required must be given as provided by law, * * *." Thus, only when the instructions given do not cover an issue upon which the law requires an instruction is it necessary for the court to give the additional information. State. v. Mullenix, 212 Iowa 1043, 1047–1050, 237 N.W. 483, 485–487.

The trial court felt its Instruction No. 12 clearly and adequately told the jury what constituted a principal and an aider and abettor sufficient to justify a finding of guilt of the offenses charged. The words "accessory before the fact" or "accessory after the fact" were not used, and the language of the court could scarcely be understood to refer to a crime involving after-the-fact actions. Instruction No. 12 told the jury: "You are instructed that under the laws of this state all persons knowingly involved in the commission of a crime or aiding and abetting its commission may be charged, tried, and punished as principals. In order to aid and abet another to commit a crime it is necessary that a defendant willfully associate himself in some way with the criminal venture; and

that he willfully participate in it *as in something he wishes to bring about;* and that he willfully seek by some action of his own *to make it succeed."* (Emphasis supplied.) As the State contends, this instruction was adequate and fairly informed the jury as to the law applicable to the facts revealed herein. I agree.

There was no request for clarification of Instruction No. 12 at the time of trial and no objection as to its adequacy in the motion for a new trial. If defendant thought it inadequate, he was under a duty to call it to the court's attention at that time. State v. Kaster, Iowa, 160 N.W.2d 856, 859.

In Division IV the majority admits defendant was charged with the crime of larceny in the nighttime and that the proof of aiding and abetting is sufficient for conviction as a principal. It also admits the instructions given on these matters were proper, and that an original instruction as to the distinction between an accessory before the fact (section 688.1) and after the fact (section 688.2) was not required. Indeed, had such an instruction been given, defendant would no doubt have claimed its giving was reversible error.

Nevertheless, pursuant to the jury's note while in deliberation asking the judge, "If Kittelson did not take part in the actual theft but did help throw it out, or did know about it afterward—would he be guilty of larceny or of larceny in the nighttime?", the majority would require the judge to give an additional instruction on an issue foreign to the crime for which he was being tried. In my opinion this goes too far.

The trial court considered the instructions given were sufficient to enlighten the jury on the law as applied to the offense charged and the theory under which the case was tried. What more is necessary? If the jury indicates it is venturing beyond the case before it, must the court do more than tell it to return to the issues presented

and apply the law given by its instruction? If more is required, then what is the test?

Obviously, it was defendant's theory that he did not participate in the larceny either before or after its commission, that he did not aid or abet its commission or know of the disposition of the stolen property.

Any instruction as to an accessory, in my opinion, was improper, and any inference that the jury was confused as to the effect of subsequent participation would not rise to the dignity of a request for amplification of a given instruction. The fact that juries may confuse themselves is not grounds for the court to join them as an adviser. I would hold the court fairly and properly analyzed the situation and did not abuse its discretion in refusing to advise the jury on a subject not included in its original instructions, which were not objected to during the trial.

Although the majority's insistence on granting this defendant a new trial disturbs me, the failure to set out a rule on guideline by which a trial court can determine when it must grant such a jury request disturbs me even more. After citing several foreign cases which the majority asserts require the granting of such a request under similar statutes, it says: "We do not decide the statute (section 784.2) requires amplifying instructions in all cases. Questions may be asked which can not be answered by the court without exceeding its proper function. The trial court must make its decision in each case under the particular circumstances then existing." What circumstances must be considered? I submit this direction is of no help to trial courts or to attorneys or the bar in general.

On the other hand, the trial court here did consider the circumstances, did refuse to give an instruction which it felt would exceed its proper function, and did direct the jury to further consider its instructions in the light of the issues and charges involved. Certainly the jury request was not ignored. Since it did not constitute a request *for amplification* of an instruction

given, the new and improper request was denied. Nowhere in the instructions given is the word "accessory" used, and yet the majority would require the court to venture into that field of law because the jury seemed confused as to the effect of after-handling of the stolen property. I have carefully examined the cases cited by the majority and fail to find one of them that goes that far.

In Division V of its opinion the majority next finds fault with the trial court's effort to instruct on an issue it felt *was raised* by the evidence presented by defendant. It concluded this evidence permitted and perhaps required the giving of an alibi instruction. The majority holds the giving of this instruction (18A) was reversible error because "the giving of such an instruction was not substantiated by the record", that this instruction confused the minds of the jury, and that its giving was an abuse of the court's discretion. I disagree.

Although it admits the failure of defendant to proffer an alibi defense alone would not prevent or deny the giving of such an instruction *if* the evidence offered by the defendant arose to the dignity of an alibi defense, it simply finds that evidence insufficient here. Again the majority fails to give the trial court or the attorneys any idea or rule by which courts can apply this court's idea as to what evidence is sufficient to permit or require the giving of an alibi instruction.

I do not agree that defendant's evidence and Formaro's testimony did not tend to establish the essential elements of alibi. It did tend to establish that defendant could not have been at the scene of the crime, that at the time of the larceny he was in or near Decorah, which is some 30 or 40 miles west of Monona where the break-in occurred. It did tend to prove *more* than a denial that he was at the scene of the crime or create an easily manufactured defense. True, if defendant's evidence is not directed to showing

impossibility of his being at Decorah and Monona at the time of the break-in, then it would not justify an alibi instruction, but I submit the evidence was all to the contrary.

The majority concedes defendant's evidence was not disparaged, that it showed he was either in his mother's home in Decorah or in a car that night up until his apprehension southwest of Calmar, many miles from Monona. It admits this evidence tended to prove he was in an automobile from about 2:30 A.M. to 3:45 A.M. that morning in the vicinity of Decorah and Calmar, Iowa, and that a trip from Decorah to Monona and back to Calmar would cover approximately 68 miles.

The trial court felt this evidence was sufficiently clear to justify the giving of such an alibi instruction and, if any discretion is given the trial court in such cases, these circumstances justify its decision and certainly do not reveal any abuse of that discretion. Considering the time elements and the distances involved, it is hard to see why this defendant evidence did not rise to the dignity of alibi. How much greater distance or less time would justify or require the court to instruct on alibi? How much, if any, discretion is vested in the trial court? If such courts are to intelligently apply such a rule, it seems some guidance should be given for proper application. Here again the majority fails to provide any guidance. I have examined the cases cited in the majority opinion and find in none of them support for the finding that the evidence here was insufficient to justify the court's alibi instruction No. 18A.

The majority cite and refer to State v. Wagner, 207 Iowa 224, 230, 231, 222 N.W. 407, 410, 61 A.L.R. 882, which apparently applies a general rule to the facts of that case. The court there stated: "Such extraneous affirmative facts, depending on precise date, time, place, occurrences, and conditions at such place and the relation of such occurrences and conditions to the

time and place of the commission of the crime * * * are easily manufactured. If defendant's evidence is not directed to showing such impossibility, then he is not setting up an alibi, and his evidence ought not to be disparaged as an easily manufactured defense." I have no quarrel with that statement. Applied here, defendant's evidence was directed toward showing it was impossible for him to be at Monona when he was between 30 and 40 miles away at the time the break-in must have occurred.

The majority concedes the mere failure of the defendant to notify the State of an alibi defense as provided in section 777.18 of the Code does not prevent the giving of such an instruction if the evidence later justifies it. The question is not determined simply by what defendant contends is his defense. State v. Bosworth, 170 Iowa 329, 152 N.W. 581.

I also agree it is primarily the duty of the trial court to assess all of defendant's evidence before deciding whether an alibi defense is raised and whether such an instruction is proper. Of course, this discretion is not absolute and is reviewable on appeal.

The problem here presented is whether under the defendant's evidence the court could reasonably find that he was attempting to interpose the alibi defense.

A close examination of the cases is helpful to our determination of what evidence may be considered as an attempt to establish an alibi and call for this instruction.

In State v. Dunne, 234 Iowa 1185, 1191, 1192, 15 N.W.2d 296, 300, it is said:

"An instruction on alibi should not be given when testimony for a defendant seeks merely to controvert the state's evidence. Under a plea of not guilty, a defendant has a right to show not only that he did not commit the act but that he was doing something else at the time. Where an alibi is claimed, a defendant is attempting to prove not only that he was not present, but that he was at another place *so remote* or under such circumstances that he could not have been present. *Unless* a defendant is attempting to show the practical impossibility of his presence at the scene of the crime, he is not setting up an alibi and his evidence should not be disparaged as an easily manufactured defense. In determining whether an alibi is claimed, the distance of defendant's whereabouts from the scene of the crime, as shown by his evidence is not the only determining factor. The question is whether if defendant's evidence is believed the practical impossibility of his presence at the scene of the crime is thereby established. State v. Wagner, 207 Iowa 224, 230, 231, 222 N.W. 407, 61 A.L.R. 882, and cases cited; State v. Bird, 207 Iowa 212, 215, 220 N.W. 110, 222 N.W. 411; State v. Debner, 205 Iowa 25, 28, 215 N.W. 721; 15 Am.Jur. 14, 15, §§ 314, 315; annotation 67 A.L.R. 138, 149." (Emphasis supplied.)

In State v. Wagner, supra, at pages 230 and 231 of 207 Iowa, 222 N.W. at page 410, we had this to say as to when the instruction should not be given:

"Obviously, this instruction should not be given when the defendant is seeking to do no more than controvert merely by way of negation the evidence of the state— when he is not attempting by proof of facts, wholly extraneous to the state's evidence that he was not only not present, but that it was impossible that he could have been present,—impossible not merely because he says he was not there, but affirmatively because he was so situated or circumstanced that he could not have been there. * * * The circumstances and conditions, the facts proved to constitute an alibi, must have been such that he could not at the time thereof have been at the place of the commission of the offense, and therefore could not have been the perpetrator."

In State v. Stump, 254 Iowa 1181, 1194, 119 N.W.2d 210, 218, we find this discussion as to when a defendant's evidence interposes a defense of alibi:

"Even in the absence of the alibi notice required by section 777.18, Code of Iowa, I.C.A., defendant may take the witness stand and testify to all material and relevant matters. He may testify that he was so far away and at such a specified place that he could not have been present at the scene of the crime. * * * If the defendant voluntarily elects to go further and call witnesses to testify in support of his alibi he must then give the notice required by statute. He assumes the offensive. He offers witnesses to testify that he could not possibly have committed the offense because he was too far away. This goes only to the testimony that he was at some specific place. If established it constitutes an absolute defense. To the extent that it may be an absolute defense it is affirmative in nature."

A careful examination of the record before us discloses testimony of both the defendant and another that at the time of this larceny he could not have been present at the scene of the crime. Surely, if believed, it would constitute an absolute defense to the crime charged. Defendant testified he was at his mother's home in Decorah from 5 P.M. until 2:30 A.M. the next morning, that between 2:30 or 3 A.M. and 3:45 A.M. he was in an automobile being driven from Decorah to Calmar over gravel roads, a distance of 10 or 11 miles. Formaro, called on his behalf, corroborated this story and testified that he and defendant were at the home of defendant's mother in Decorah from 5 P.M. until 2:30 A.M. the next morning, and they made slow progress on the trip to Calmar over unfamiliar gravel roads and did not arrive in Calmar until 3:45 A.M. when they were stopped by authorities. Decorah is 10 miles north of Calmar, and Monona, where this break-in occurred, is 29 or 30 miles east of Calmar. I believe defendant's affirmative evidence as to his location at the time of this break-in was sufficient to justify, if not require, the giving of the alibi instruction No. 18A.

I am satisfied defendant here had a fair trial, that the trial court tried hard to provide such a trial, and that it did not in any way abuse its discretion in refusing to instruct further as to aiding and abetting and in giving an alibi instruction under the circumstances revealed by the evidence. I would affirm.

GARFIELD, C. J., and SNELL and MOORE, JJ., join in this dissent.