# IN THE COURT OF APPEALS OF IOWA

No. 18-1623
Filed April 15, 2020

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**ANTHONY FRANK ERNST,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Anthony Ernst appeals his conviction of attempted burglary in the third degree. **REVERSED AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MULLINS, Judge.**

Anthony Ernst appeals his conviction of attempted burglary in the third degree in violation of Iowa Code section 713.6B (2017). He argues the State failed to produce sufficient evidence to support the verdict and that it is against the weight of the evidence. He also argues his trial counsel was ineffective in failing to object to the admission of cell phone records.

## I.     Background Facts and Proceedings

On August 21, 2017, a break-in occurred in a garage of a home in a rural area of Dubuque County that was owned by a probation and parole officer. The homeowners testified the doors and windows in the garage were locked in the morning. When a homeowner arrived around 4:30 p.m., he saw the door leading from the garage to the yard was slightly open and appeared it had been forced open with a pry bar. The doorknob was still in the locked position. Both homeowners said weather stripping around the doorknob and bottom of the door was damaged. Nothing was taken from the garage or appeared to be out of place.

The home is located on a dead-end gravel lane, off another road accessed by Highway 20. The lane is about 400 yards long with a business property at the north end, a farm at the south end, and the subject home about half way between.

Investigator Bill Grant of the Dubuque County Sheriff's Department observed the damage to the door but was unable to find any fingerprints or footprints. The business at the end of the lane released surveillance footage to Grant revealing only one vehicle that could not be accounted for: a 2006 to 2011 white Crown Victoria that was driven toward the home at 10:31 a.m. and away from the home at 10:43 a.m. The car had only one occupant. A search revealed a

white Crown Victoria was registered to Ernst, a parolee supervised by one of the homeowners. Still photos from both surveillance and city traffic footage were provided to the homeowner, who identified the car as Ernst's based on specific rust and paint-damage patterns.

Ernst denied any involvement in the burglary. He said he visited both a sister and his mother, who live in other rural areas of the county, the morning of the incident and then attended an unrelated court proceeding in the afternoon. City traffic cameras showed Ernst left the city of Dubuque at 8:55 a.m. and returned at 12:20 p.m. Ernst's sister initially said he was not at her home on August 21 but testified at trial he visited her that morning. Ernst's mother testified he arrived at her home around 11:15 a.m. and remained there until 12:00 p.m., when they both went to Dubuque. Testimony showed Ernst and his sister discussed knowing where the parole officer lived or at least assuming the home belonged to the parole officer.

Grant testified to cell phone records showing Ernst called his mother at 11:45 and 11:48 a.m., when Ernst's mother testified he was at her home. Grant also testified on historical cell site data, stating the towers used for the calls were those near the location of the alleged crime, not near Ernst's mother's home.

The State's trial information charged Ernst with burglary in the third degree with the intent to commit a theft, assault, or felony. The district court only submitted the theft alternative to the jury. The jury convicted Ernst of attempted burglary in the third degree, a lesser-included offense. Ernst filed a motion for new trial and a motion in arrest of judgment; both were unsuccessful. Ernst appeals.

**II.    Standard of Review**

On the sufficiency-of-the-evidence claim, our review is for correction of errors at law.  *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017) (citing *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012)).  Evidence is viewed "in the light most favorable to the State."  *Id.* (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002)).

**III.    Analysis**

Ernst argues insufficient evidence was presented by the State to support a conviction of attempted burglary in the third degree.  A verdict will be upheld "if substantial record evidence supports it."  *Sanford*, 814 N.W.2d at 615 (quoting *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 20016)).  Evidence is substantial if "it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *Id.*

The State bears the burden of proving every element of a charged offense.  *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010).  Ernst does not challenge the jury instructions employed at trial for the charged crime.  As such, the instructions serve as the law of the case for purposes of reviewing the sufficiency of the evidence.  *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018).  The jury was instructed on attempted burglary as follows.

> The State must prove all of the following elements of Attempted Burglary:
>
> 1. On or about the 21st day of August, 2017, the defendant attempted to enter a garage. . . in Cascade, Iowa.
> 2. The garage was an occupied structure as defined in Instruction No. 18.
> 3. The defendant did not have permission or authority to enter the garage.

4. The defendant did so with the specific intent to commit theft.

If the State has proved all of these elements, the defendant is guilty of Attempted Burglary in the Third Degree. If the State has failed to prove any one of the elements, the defendant is not guilty.

Ernst argues the State failed to prove the elements of the offense of attempted burglary. The State concedes he preserved error to challenge identity, attempted entry, and specific intent.

The jury heard evidence on Ernst's car. Testimony showed that the paint primer used on Crown Victoria vehicles between 2006 and 2011 was faulty and those vehicles have sustained paint and rust damage. That damage is not uniform, meaning each car has an individual, specific pattern of damage. The security-camera footage showed that a white Crown Victoria with paint and rust damage matching Ernst's car was in the immediate vicinity of the home on the morning of the break-in. The car had only one occupant, the driver. All other cars on the road were identified as having business associated with the farm. The footage showed the car drove toward the home on the short, dead-end road, and drove away about thirteen minutes later. The only structures past the security cameras are the home and a farm. There is no business or public property past the business with the security cameras. The jury heard testimony that the side garage door on the home was locked on the morning of the break-in and from both the homeowners and investigating officer that it had been forced open. Thirteen minutes is sufficient time to arrive at the home, park, force entry into a door, and retreat away from the home, returning by the same surveillance camera.

The State presented evidence from traffic cameras and a call log from Ernst's cell phone. Ernst's mother testified he arrived at her home between 11:00

and 11:30 a.m. and stayed until the pair left for Dubuque at noon. But phone records show Ernst's mother called his cell phone twice, at 11:45 and 11:48 a.m. Testimony showed the first call was unanswered, but the second lasted for 113 seconds. Ernst's mother provided no explanation for the phone calls and admitted she did not think Ernst would call her if he was at her home. Ernst's mother also testified the pair ran errands together in Dubuque before he dropped her off to see a grandchild. But traffic cameras in Dubuque showed Ernst was in town alone.

The jury heard testimony regarding Ernst's knowledge his parole officer owned the home. Ernst's sister testified that she and Ernst were on a website that showed property owner information and discovered the home. She stated that she and Ernst had a discussion in which they realized, or at least suspected, that the home belonged to Ernst's parole officer. Ernst's sister was familiar with the parole officer because her fiancé had the same parole officer. When questioned about the break-in, Ernst's sister told police that Ernst knew the home belonged to his parole officer. She also told police Ernst was not with her on the morning of the break-in, but she later testified he was with her.

There was evidence that it was possible Ernst and the other homeowner had encountered each other on construction sites while working for their respective employers. From that, the State theorized Ernst may have knowledge of that homeowner's work schedule. In addition, the State argued that because of Ernst's own appointments with his parole officer, he could have believed the home would be unoccupied during the 10:00 a.m. hour. And, in arguing against the motion for judgment of acquittal, the prosecutor explained:

His intent to do something bad in that garage is something where the circumstantial evidence is overwhelming. . . . So a garage in an isolated house when he has the morning off might be a good place to commit a theft of someone's garage. . . . [G]arages are places that burglars typically identify as somewhere to steal something small.

In its ruling on Ernst's motion for judgment of acquittal, the district court explained:

I think viewing the evidence in a light most favorable to the State, there is circumstantial evidence of entry. That would be the pry marks and, you know, the evidence that the State asserts places Defendant at the scene. The attorneys certainly can argue to the jury whether that evidence is reliable or not reliable.

I'd like to hear a little bit further from [the State], because the bigger question in my mind is the threshold as to the specific intent element of the crime. And having heard the evidence, while I think that there's enough evidence to go to the jury that—for them to determine whether or not Mr. Ernst made unauthorized entry into that residence, *I'm still trying to sort through the evidence what would suggest that he did so with the specific intent to commit a theft or an assault* . . . .

(Emphasis added.) After further arguments by counsel, the Court added:

Having heard the arguments of counsel, I think the State's case is challenged as to the specific intent element. However, I'm viewing it in a light most favorable to the State. And based on, you know, [the State's] argument to this point, *I'm willing to accept that there is at least a circumstantial element of a specific intent to commit a theft because that would be a natural reason for someone to gain entry— unauthorized entry into a residence or a garage. Regardless of whether anything was taken or not, that would be a motive to gain entry.*

I do not find any evidence at all in the record that would suggest or support an allegation that there was a specific intent to commit an assault toward [the parole officer]. A person can speculate as to that, but there's been no evidence that I can recall, unless somebody can point it out to me, of any particular animus of the Defendant towards [the parole officer], any motive to assault [the parole officer] other than the fact that he was subject to [the parole officer's] supervision along with 55 other people or thereabouts. I just don't think there's been any evidence of a specific intent to assault.

> *So I am going to grant the motion as to any instruction or argument that there was a specific intent to assault. But based on the other rulings, the circumstantial evidence of entry and the circumstantial evidence of a specific intent, I'll let the parties make their argument to the jury.* So the motion is granted on that small point but otherwise denied.

(Emphasis added.)

"Mere presence at the scene of a crime is not enough to prove defendant committed the offense." *State v. Kittelson*, 164 N.W.2d 157, 162 (Iowa 1969). Evidence, circumstantial or direct, "must generate something more than suspicion, or speculation, or conjecture." *Id.* It "must be sufficient to raise a fair inference of guilt." *Id.* "Where circumstantial evidence alone is relied upon, the circumstances must not only be consistent with defendant's guilt but inconsistent with any rational hypothesis of defendant's innocence." *Id.* "There must be substantive proof of guilt—some fact proven which tends to establish the substantive facts upon which the state relies for conviction." *State v. Keyser*, 130 N.W.2d 701, 704 (Iowa 1964).

For the sake of this analysis, we will assume—without deciding—the evidence was sufficient for the jury to conclude that Ernst was the person who pried the door open. However, we share the district court's concerns about specific intent. It found there was not enough evidence to submit to the jury on intent to commit an assault, but found there was enough evidence to submit to the jury on intent to commit theft.

This is not a case where there is direct evidence of forced entry and who committed it, followed by circumstantial evidence pointing to an intent to commit theft. The case starts with direct evidence Ernst was in the area, and it is a combination of a number of circumstances that warrant a conclusion that

circumstantial evidence supports a finding he pried the door open.  The State takes that conclusion based on circumstantial evidence, and without additional evidence argues circumstantial evidence is sufficient to prove beyond a reasonable doubt Ernst had the specific intent to commit theft.

We do not agree the evidence is consistent with guilt and inconsistent with any other rational hypothesis.  *See id.*  The State's arguments, both in response to the motion for judgment of acquittal and in its summation to the jury, are based on suspicion, theory, and conjecture.  The fact that people often store items in a garage and an argument that burglars often steal from garages for financial gain, without more, do not constitute substantive proof that Ernst is guilty beyond a reasonable doubt of intent to commit theft.  *See id.*  Thus, after considering the evidence in a light most favorable to the State, we part ways with the district court on its conclusion the evidence was sufficient to show specific intent to commit theft, and reverse and remand for judgment of acquittal.

Given this disposition, we need not address other issues on appeal.

**IV.    Conclusion**

Because the evidence is not sufficient to support the jury's verdict, we reverse and remand for judgment of acquittal.

**REVERSED AND REMANDED.**